No. 11-2003

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT
_____

**KEVIN COWDEN,**
Plaintiff-Appellant,

v.

**BNSF RAILWAY COMPANY,**
Defendant-Appellee.

_____

On Appeal from the United States District Court for the
Eastern District of Missouri, No. 4:08-CV-1534.
The Honorable **E. Richard Webber**, presiding.
_____

**BRIEF AND ADDENDUM OF DEFENDANT-APPELLEE**
_____

Thomas E. Jones
Thompson Coburn, LLP
525 West Main Street
P.O. Box 750
Belleville, Illinois 62222-0750
618-277-4700
FAX 618-236-3434
tjones@thompsoncoburn.com

Attorneys for Defendant-Appellee
BNSF Railway Company

**Oral Argument Requested**

# CORPORATE DISCLOSURE STATEMENT

The undersigned, counsel of record for BNSF Railway Company (formerly known as The Burlington Northern and Santa Fe Railway Company), furnishes the following in compliance with Federal Rule of Appellate Procedure 26.1 and Eighth Circuit Rule 26.1A:

1.  Any parent corporation:

Burlington Northern Santa Fe, LLC owns all of the stock of BNSF Railway Company. Burlington Northern Santa Fe, LLC is wholly owned by National Indemnity Company. National Indemnity Company is wholly owned by OBH, Inc. OBH, Inc. is wholly owned by Berkshire Hathaway Inc.

2.  Any publicly held corporation that owns 10% or more of its stock:

Berkshire Hathaway Inc. is a publicly held company that indirectly owns 100% of the stock of BNSF Railway Company.  Berkshire Hathaway Inc. shares (BRK-A and BRK-B) are publicly traded on the New York Stock Exchange.

Appellate Case: 11-2003    Page: 2    Date Filed: 08/11/2011 Entry ID: 3817298

# TABLE OF CONTENTS

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF CONTENTS .......................................................................... ii

TABLE OF AUTHORITIES ....................................................................... iv

STATEMENT OF THE ISSUES ...................................................................1

STATEMENT OF FACTS ........................................................................3

    A.    The alleged injury ..................................................................4

    B.    BNSF's Motion for Summary Judgment. .....................................8

    C.    BNSF's Motion to Bar the Expert Testimony of Blackwell. .........9

SUMMARY OF THE ARGUMENT ...........................................................12

ARGUMENT .........................................................................................15

I.    The District Court properly granted summary judgment in favor of BNSF because Plaintiff failed to provide evidence of each required element of negligence. ..........................................................................................15

II.    The District Court properly granted summary judgment in favor of BNSF on the basis of FRSA preclusion. ..................................................................21

    A.    The District Court properly granted summary judgment on grounds asserted by BNSF; Even if the grounds were not asserted, the Court did not err in ruling on dispositive issues. ...................................................................21

    B.    BNSF did not waive any claim to preclusion by not asserting it as an affirmative defense. ...............................................................................24

    C.    The FRSA does preclude Plaintiff's claims under the FELA regarding track conditions and train speed. ......................................................................26

        1.    The protective nature of the FELA and the Federal common law of FELA liability do not prevent a railroad from defending itself by showing compliance with an FRA regulation that covers the subject matter at issue. ...26

Appellate Case: 11-2003    Page: 3    Date Filed: 08/11/2011 Entry ID: 3817298

2.    Plaintiff's argument that "there is no intolerable conflict between FELA common law liability and the FRSA or other basis for concluding that the FRSA supersedes the FELA" is a red herring. ...................................................40

3.    Multiple courts have found that FRA regulations preclude FELA claims similar to Plaintiff's claims here. ........................................................42

4.    There was no basis for the District Court to agree with Plaintiff on the preclusion issue. ..........................................................................52

D.    Plaintiff has not shown that BNSF violated any FRA regulation. ..............53

III.    The District Court properly barred Alan Blackwell from providing certain expert opinions. ...........................................................................................54

A.    The District Court did not err in barring Blackwell from opining on BNSF's alleged negligence in allowing Plaintiff's train to operate at an unsafe speed given the condition of this track. ...................................................54

B.    Evidence of BNSF's subsequent remedial measures was properly ruled to be inadmissible. ...........................................................................................57

CONCLUSION .......................................................................................................58

CERTIFICATE OF COMPLIANCE .....................................................................60

CERTIFICATE OF SERVICE ..............................................................................61

ADDENDUM OF DEFENDANT-APPELLEE .....**Error! Bookmark not defined.**

# TABLE OF AUTHORITIES

## Cases

*Atchison, Topeka and Santa Fe Ry. Co. v. Buell*,
480 U.S. 557, 107 S.Ct. 1410 (1987) ........................................................... 27, 42

*Brooks v. Union Pacific R. Co.*,
620 F.3d 896 (8th Cir. 2010) ....................................................... 1, 15, 16

*Burlington Northern R. Co. v. Farmers Union Oil Co. of Rolla*,
207 F.3d 526 (8th Cir. 2000) ................................................................28

*Chicago & Eastern R.R. Corp. v. Washington County, Iowa*,
384 F.3d 557 (8th Cir. 2004) ................................................................43

*Consolidated Rail Corp. v. Gottshall*,
512 U.S. 532, 114 S.Ct. 2396 (1994) ...................................................26

*Crown v. Union Pacific R. Co.*,
162 F.3d 984 (8th Cir. 1998) ................................................................16

*CSX Transp., Inc. v. Easterwood*,
507 U.S. 658, 113 S.Ct. 1732 (1993) .......................... 1, 32, 36, 37, 38, 40, 47, 55

*CSX Transp., Inc. v. McBride*,
131 S.Ct. 2630 (2011) ..........................................................................27

*Davis v. Union Pacific R. Co.*,
598 F.Supp.2d 955 (E.D.Ark. 2009) ....................................................45

*Denton v. Mr. Swiss of Missouri, Inc.*,
564 F.2d 236 (8th Cir. 1977) ................................................................22

*Dickerson v. Staten Trucking, Inc.*,
428 F.Supp.2d 909 (E.D.Ark. 2006) ....................................................... 36, 43, 44

*Dulany v. Carnahan*,
132 F.3d 1234 (8th Cir. 1997) ..............................................................55

*Duluth, Winnipeg and Pacific Ry. Co. v. City of Orr*,
529 F.3d 794 (8th Cir. 2008) ................................................................38

Appellate Case: 11-2003    Page: 5    Date Filed: 08/11/2011 Entry ID: 3817298

*Earwood v. Norfolk Southern Ry. Co.*,
    845 F.Supp. 880 (N.D.Ga. 1993)................................................................... 46, 47

*Elston v. Union Pacific Railroad Company*,
    74 P.3d 478 (Colo.Ct.App. 2003).......................................................................46

*Federal Ins. Co. v. Burlington Northern and Santa Fe Railway Co.*,
    270 F.Supp.2d 1183 (C.D.Cal. 2003)........................................................... 36, 41

*Financial Timing Publ'ns, Inc. v. Compugraphic Corp.*,
    893 F.2d 936 (8th Cir.1990) .............................................................................25

*Francisco v. Burlington N. R.R. Co.*,
    204 F.3d 787 (8th Cir. 2000) ................................................................. 1, 15, 19

*Grimes v. Norfolk Southern Ry. Co.*,
    116 F.Supp.2d 995 (N.D.Ind. 2000)............................................................. 45, 47

*Heisler v. Metropolitan Council*,
    339 F.3d 622 (8th Cir. 2003) .........................................................................1, 24

*Henning v. Union Pacific R. Co.*,
    530 F.3d 1206 (10th Cir. 2008) .........................................................................32

*In re Amtrak "Sunset Limited" Train Crash in Bayou Canot*,
    188 F.Supp.2d 1341 (S.D. Ala. 1999) .......................................................... 32, 43

*Interco Incorporated v. National Surety Corp.*,
    900 F.2d 1264 (8th Cir. 1990) ...........................................................................22

*Iowa, Chicago & Eastern R.R. Corp. v. Washington County, Iowa*,
    384 F.3d 557 (8th Cir. 2004) ....................................................................... 36, 37

*Kernan v. American Dredging Co.*,
    355 U.S. 426, 427, 78 S.Ct. 394, 395 (1958) .....................................................27

*Key v. Norfolk So. Ry. Co.*,
    228 Ga. App. 305, 491 S.E.2d 511 (Ct. App. Ga. 1997).....................................32

*Kresel v. BNSF Railway Company*,
    2011 WL 1456766 (D.Minn. April 15, 2011) (slip copy)...................................45

Appellate Case: 11-2003    Page: 6    Date Filed: 08/11/2011    Entry ID: 3817298

*Lager v. Chicago Northwestern Transp. Co.*,
122 F.3d 523 (8th Cir. 1997) ............................................................... 15, 16

*Lane v. CSX Transp., Inc.*,
241 F.3d 439 (5th Cir. 2001) ........................................... 2, 32, 33, 44, 46, 47, 52

*Lewy v. Southern Pacific Transp. Co.*,
799 F.2d 1281 (9th Cir. 1986) ..........................................................28

*Major v. CSX Transp.*,
278 F.Supp.2d 597 (D.Md. 2003)..........................................................43

*Marshall v. Burlington Northern, Inc.*,
720 F.2d 1149 (9th Cir. 1983) ..........................................................29

*McCain v. CSX*,
708 F.Supp.2d 494 (E.D.Pa. 2010)......................................................45

*Morant v. Long Island R.R.*,
66 F.3d 518 (2nd Cir. 1995)..............................................................27

*Munns v. CSX Transp., Inc.*,
2009 WL 805133 (N.D.Ohio 2009) (unpublished) ..........................39, 40, 45, A5

*Murrell v. Union Pac. R.R. Co.*,
544 F. Supp. 2d 1138 (D. Or. 2008)....................................................55

*Nickels v. Grand Trunk Western Railroad, Inc.*,
560 F.3d 426 (6th Cir. 2009), *cert den.* 130 S.Ct. 1136.......... 2, 32, 44, 46, 47, 49

*Norfolk Southern Rwy. Co. v. Shanklin*,
529 U.S. 344, 120 S. Ct. 1467 (2000) ...................................... 2, 33, 36

*Norris v. Central of Georgia Railroad Company*,
635 S.E.2d 179 (Ga.App. 2006) ........................................................45

*O'Bannon v. Union Pacific R.R. Co.*,
960 F. Supp. 1411 (W.D. Mo. 1997)....................................................39

*Padgett v. Southern Railway Co.*,
396 F.2d 303 (3rd Cir. 1968)..............................................................18

Appellate Case: 11-2003   Page: 7   Date Filed: 08/11/2011 Entry ID: 3817298

*Ragsdell v. Southern Pacific Transportation Co.*,
  688 F.2d 1281 (9th Cir. 1982) ...........................................................................18

*Rice v. Cincinnati, N.O. & Pac. Ry. Co.*,
  955 F.Supp. 739 (E.D. Ky. 1997) ................................ 2, 32, 33, 40, 41, 43, 56, 57

*Sportsman v. BNSF Ry. Co.*,
  2011 WL 2134373 (E.D.Mo. May 26, 2011) (slip copy) .....................................19

*St. Louis Southwestern Ry. Co. v. Pierce*,
  68 F.3d 276 (8th Cir. 1995) ..................................................................... 37, 39

*Stoebner v. Parry, Murray, Ward & Moxley*,
  91 F.3d 1091 (8th Cir.1996) ..............................................................................25

*Tufariello v. Long Island R. Co.*,
  458 F.3d 80 (2nd Cir. 2006) .................................................... 49, 50, 51, 52

*Urie v. Thompson*,
  337 U.S. 163, 69 S.Ct. 1018 (1949) ..................................................................27

*Vidlak v. Burlington Northern R.R.*,
  16 F.3d 1229 (Table), 1993 WL 528041 (8th Cir. 1993) .....................................19

*Walker v. St. Louis-Southwestern Ry. Co.*,
  835 S.W.2d 469 (Mo.App. E.D. 1992) ...............................................................38

*Waymire v. Norfolk & W. Ry. Co.*,
  218 F.3d 773 (7th Cir. 2000), cert. denied 531 U.S. 1112, 121 S.Ct. 856 (2001) ...
  ......................................................................... 2, 32, 38, 44, 46, 49, 52

*Weaver v. Mo. Pac. R.R. Co.*,
  152 F.3d 427 (5th Cir. 1998) ..................................................................... 29, 30

## Statutes

45 U.S.C. § 51 .......................................................................................................3

45 U.S.C. § 55 ................................................................................................ 28, 29

Appellate Case: 11-2003    Page: 8    Date Filed: 08/11/2011 Entry ID: 3817298

49 U.S.C. § 20106 ............................................................................... 34, 37

**Other Authorities**

43 Fed. Reg. 10585-86 (March 14, 1978)................................................37

H.R. Report No. 91-1194 .........................................................................36

**Rules**

Federal Rule of Civil Procedure. 8 ........................................................25

Federal Rule of Evidence 407 ................................................... 2, 13, 62, 63

**Regulations**

49 C.F.R. § 213 ......................................................................................37

49 C.F.R. § 213.9 ................................................... 6, 10, 37, 38, 41, 43, 44, 46, 62

49 C.F.R. § 213.55 ............................................. 5, 6, 37, 38, 45, 46, 59, 62

49 C.F.R. § 213.63 ................................................. 5, 6, 38, 39, 45, 46, 58, 59, 62

49 U.S.C. § 213.103 ............................................................... 39, 48, 49, 50

49 C.F.R. § 229.119 .................................................................... 31, 32

49 C.F.R. § 229.129 ................................................................................56

Appellate Case: 11-2003    Page: 9    Date Filed: 08/11/2011 Entry ID: 3817298

## STATEMENT OF THE ISSUES

I. Did the District Court err in granting BNSF summary judgment in light of Plaintiff's evidence of alleged negligence regarding track conditions and causation?

> *Brooks v. Union Pacific R. Co.*, 620 F.3d 896 (8th Cir. 2010)
>
> *Francisco v. Burlington Northern R.R. Co.*, 204 F.3d 787 (8th Cir. 2000)

II. Did the District Court properly grant summary judgment in favor of BNSF on the issue of preclusion: (1) because BNSF argued in general that Plaintiff had not presented evidence of each element of his case rather than preclusion specifically; (2) because BNSF did not assert preclusion as an affirmative defense in its Answer; (3) because the FRSA and its regulations do preclude Plaintiff's FELA claim; (4) and because Plaintiff's evidence failed to show any violation of the applicable FRA regulations?

> *Heisler v. Metropolitan Council*, 339 F.3d 622 (8th Cir. 2003)
>
> *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 113 S.Ct. 1732 (1993)
>
> *Norfolk Southern Rwy. Co. v. Shanklin*, 529 U.S. 344, 120 S. Ct. 1467 (2000)
>
> *Nickels v. Grand Trunk Western Railroad, Inc.*, 560 F.3d 426 (6th Cir. 2009) *cert. den.* 130 S.Ct. 1136

Appellate Case: 11-2003    Page: 10    Date Filed: 08/11/2011 Entry ID: 3817298

III. Did the District Court err in barring Plaintiff's expert from: (1) opining that BNSF operated its train at an "unsafe speed" in light of the track conditions; and (2) describing the subsequent remedial measures taken by BNSF?

> *Rice v. Cincinnati, New Orleans & Pacific Ry. Co.*, 955 F.Supp. 739 (E.D.Ky. 1997)

> *Lane v. CSX Transp., Inc.*, 241 F.3d 439 (5th Cir. 2001)

> *Waymire v. Norfolk & W. Ry. Co.*, 218 F.3d 773 (7th Cir. 2000)

> Federal Rule of Evidence 407

## STATEMENT OF FACTS

To determine what is at issue, the allegations of Plaintiff's Complaint must be examined. Plaintiff has alleged injuries "on or about January 14, 2008, [when] the plaintiff was employed by the defendant as a conductor when he *encountered rough track* causing him to sustain injuries…" (JA8, JA10) (emphasis added). Count I is brought for alleged negligence under the Federal Employers' Liability Act ("FELA"), 45 U.S.C. § 51 *et seq*. (JA7-9). Count II is brought for alleged violations of the Locomotive Inspection Act ("LIA"), but only Count I is at issue in this appeal. (JA10-11).

The word "speed" cannot be found anywhere in the Complaint. As such, it is the position of BNSF that any issues regarding speed were never properly before the District Court or this Court, and that any opinions from Plaintiff's expert Alan J. Blackwell ("Blackwell") regarding train speed were irrelevant. This is why the issue of speed preemption/preclusion was not directly raised in BNSF's Motion for Summary Judgment (JA19-24; JA111-129), but was raised in regard to Blackwell's opinions (JA25-110).

The District Court stated in its April 13, 2011 order that "the Court did *not* find that Plaintiff's FELA negligence claim was precluded by FRSA regulations, nor did it conclude that FRSA regulations provide a railroad's minimum duty of care for *every* FELA negligence claim. Plaintiff was only asserting that Defendant was

Appellate Case: 11-2003    Page: 12    Date Filed: 08/11/2011 Entry ID: 3817298

negligent with respect to two related matters—operating the locomotive at an excessive speed and under poor track conditions, and the Court narrowly concluded that because specific FRSA regulations govern railroad speed limits and track conditions, those regulations supplied the standard of care for Plaintiff's FELA negligence claim." (JA582). Because Plaintiff did not produce evidence that BNSF violated those regulations, summary judgment was granted in its favor.

## A. The alleged injury

It is undisputed by Plaintiff or his expert that BNSF had imposed a 40 mile per hour speed restriction on the track at issue which was effective on the day of the alleged incident. (JA45; JA113 ¶ 1; JA118 ¶ 1). Plaintiff estimated his speed to be 35-38 miles per hour at the time of the alleged incident. (Appellant's Brief, p.7; JA114 ¶ 10; JA189 ¶ 10).

Appellant's Brief acknowledges that the exact location of the alleged incident is not known. The only parameters are that Plaintiff believes it occurred "between mile markers 151.4 and 151.8." (Appellant's Brief, p.6). He determined this area of track by looking at his train orders three days after the incident and looking where the slow order was in effect. (JA21 at n.1; JA125 at p.58-59). Despite this unknown, Plaintiff asserts there was a 2 ¼ inch "drop" and 1 ½ inch crosslevel deviation "at that spot." (Appellant's Brief, p.6). The testimony cited in Appellant's Brief is from BNSF corporate designee Joseph Thornburg and states

Appellate Case: 11-2003    Page: 13    Date Filed: 08/11/2011 Entry ID: 3817298

"[t]rack measurement notes indicate a 2 and a quarter inch dip, and that is between Mile Post 151 – or 151.6, I should say, which would be a deviation of uniform profile in the cross level as well on maximum of one and one half inches." (JA382 at p.80:4-10).

As previously set forth by BNSF in its Reply in Support of its Motion to Bar Blackwell, "Plaintiff does not address the fact that the track measurements taken by Mr. McElroy on January 14, 2008, and purportedly reviewed by Blackwell (Doc. 46, p.6), show a 2 ¼" dip and 1 ½" cross level/alinement, *which are in compliance with the Federal Railroad Administration ("FRA") track regulations* for Class III track. (Doc. 32-8)." (JA265-66). The footnote to this quote cites the applicable regulation: "Alinement: '[t]he deviation of the mid-offset from a 62-foot line may not be more than … 1 ¾ inches.' 49 C.F.R. § 213.55. Track surface (*i.e.*, dip): 'The deviation from uniform profile on either rail at the mid-ordinate of a 62-foot chord may not be more than … 2 ¼ inches.' 49 C.F.R. § 213.63." (JA266). While Plaintiff cites these measurements without explanation, they were within the variation allowed by the FRA for Class 3 track.

Appellate Case: 11-2003      Page: 14      Date Filed: 08/11/2011 Entry ID: 3817298

| Measurement | | FRA maximum allowable for Class 3 track |
| --- | --- | --- |
| Dip | 2 ¼ | 2 ¼ 49 C.F.R. § 213.63 (A3) (Track surface) |
| Alinement | 1 ½ | 1 ¾ 49 C.F.R. § 213.55 (A2) (Alinement) |

Since this track met the requirements for Class 3 track, the FRA regulation titled "Classes of track: operating speed limits" provided that the "maximum allowable operating speed for freight trains [was] … 40 [miles per hour]." 49 C.F.R. § 213.9(a) (A1).

Despite the fact that BNSF was in compliance with all applicable regulations, Appellant's Brief states that "BNSF determined that the track over which Cowden's locomotive had dropped was defective." (Appellant's Brief, p.6). However, the cited evidence is a single document which, when considered in light of all of the evidence, does not support Plaintiff's conclusion. John Clark's supervisors' report stated "Probable Cause/Circumstance Codes: Track (Defective)" and "Tool, Machinery, or Surface Codes: (Ballast, Stones, etc.)" regarding the alleged accident, but this document was completed based *solely on allegations provided by Plaintiff*, and not on the personal knowledge of Mr. Clarke. At the time Mr. Clarke filled out the report, he did not have access to information concerning actual track conditions, and did not personally inspect the track. (JA215; JA276 ¶8-12; JA312 ¶ 2-5).

Appellate Case: 11-2003     Page: 15     Date Filed: 08/11/2011 Entry ID: 3817298

Appellant's Brief dedicates much space to prior "problems" with the track dating from April of 2007 to November 2, 2007. (Appellant's Brief, p.7-8). He entirely ignores the fact that geometry car data from November 6-7 of 2007, a little over two months before the alleged incident, showed *no evidence of adverse track conditions* at that time. (JA283; 303-304 at p.52:22-p.53:21). In fact, "everything was good for actually Class 4 or greater…" *Id*. Appellant's Brief acknowledges this. (Appellant's Brief, p.11). The alleged incident did not occur until January 14, 2008, and Plaintiff has not pointed to any evidence of any "defect" that developed after November 6-7, 2007. (Appellant's Brief, p.10-11). To the contrary, Plaintiff testified that he had not experienced any problems traversing this area of track in the six months prior to his alleged incident. (JA113 ¶ 2-5; JA189 ¶ 2-5). As far as Plaintiff knew, he was the first person to encounter *any* problems in the location where the 40 mile per hour restriction was in effect. (JA113 ¶ 9; JA189 ¶ 9).

Appellant's Brief concludes that "BNSF had no record of replacing any of the crossties," even though BNSF has made it clear that "Mr. Thornburg has testified that the slow order log indicates work activity to correct rough surface." (JA275 ¶ 3; JA295 at p.22:15-p.23:1).

Appellant's Brief also repeatedly cites inadmissible evidence of subsequent remedial measures taken after the incident regarding speed restrictions and repairs

Appellate Case: 11-2003    Page: 16    Date Filed: 08/11/2011 Entry ID: 3817298

which were not properly before the District Court for consideration. (Appellant's Brief, pp.7, 8).

## B. BNSF's Motion for Summary Judgment.

Regarding track conditions, BNSF moved for summary judgment on Count I for failure to prove three necessary elements of Plaintiff's FELA negligence claim: Breach of duty, causation, and foreseeability. (JA20-21 ¶ 4-5, 23).

Despite Plaintiff's belief to the contrary, the District Court granted summary judgment for precisely the reasons stated in BNSF's motion—failure to prove breach of duty or foreseeability. (JA328-33). The District Court's Memorandum and Order concluded: "there is no evidence in the record that Defendant … breached a duty owed to Plaintiff by permitting Plaintiff's locomotive to pass over the section of allegedly defective track under a slow order." (JA333).

In denying Plaintiff's Motion to Alter/Amend Judgment, the District Court stated "Plaintiff's evidence of negligence consisted of (1) Plaintiff's statements that the train bottomed out in an area where it was 'muddy' and where slow orders had been in place; (2) statements from Defendant's corporate representative acknowledging certain recorded problems with the track in question but maintaining that to the extent any such problems actually existed, they would have been addressed by the slow orders in place; and (3) entirely conclusory assertions from expert Alan Blackwell that Defendant had violated certain FRSA regulations,

Appellate Case: 11-2003     Page: 17     Date Filed: 08/11/2011 Entry ID: 3817298

lacking any factual support. From this, the Court properly concluded that Plaintiff had failed to raise a genuine issue of material fact as to whether Defendant had violated any FRSA regulations concerning speed restrictions or track conditions." (JA582-83).

### C. BNSF's Motion to Bar the Expert Testimony of Blackwell.

BNSF did not move to bar Blackwell from "providing an opinion regarding BNSF's negligence," as stated in Appellant's Brief. (Appellant's Brief, p.11). The motion sought to bar him for lack of qualifications, lack of sufficient facts supporting his opinions, lack of sufficient methodology, making improper legal conclusions, and discussing inadmissible subsequent remedial measures. (JA35 ¶ 4). The District Court denied the motion with regard to Blackwell's qualifications, making Plaintiff's recitation of those qualifications irrelevant. (JA318; Appellant's Brief, p.11-12).

While Blackwell opined that BNSF should have reduced train speeds before the alleged incident (Appellant's Brief, p.13), he never cited any reason this would have been required under the FRA regulations. The FRA Track Safety Standards on operating speed limits states "If a segment of track *does not meet all of the requirements for its intended class*, it is reclassified to the next lowest class of track for which it does meet all of the requirements of this part." 49 C.F.R. § 213.9(b). As discussed above, the most recent evidence of record was from the

Appellate Case: 11-2003     Page: 18     Date Filed: 08/11/2011 Entry ID: 3817298

November 6-7, 2007 track geometry car, which found the track to meet the requirements for the Class 4 track speed limit. Appellant's Brief does not cite any requirement that was not met and thus required a reduction in the speed limit.

Plaintiff's current argument that BNSF failed to conduct required weekly inspections was never raised in front of the District Court and has been waived. (Appellant's Brief, p.13, p.22; JA130-143). Also, even Plaintiff's own expert could not say that BNSF violated this regulation. When asked about the inspections at his deposition, Blackwell admitted that he "briefly looked through" the additional track inspection reports produced by BNSF which showed additional track inspections which had been conducted between November 2007 and the date of the alleged incident in January of 2008. (JA82 at p.30:23-p.31:15). When asked if BNSF had performed weekly inspections of the area at issue in compliance with the FRA regulations, Blackwell responded "you know, I really didn't look at that. I looked to – all I remember – recall seeing is that there was some additional inspections in between that time frame of November and – and January 1st – or 14th of 2008." (JA82 at p.31:21-25). When asked again about inspections between November 2007 through January 14, 2008, Blackwell responded "I can't really tell without having a calendar. I need to – because you have to know what – what weeks you're in to determine if it's in compliance or not." (JA82 at p.32:1-10).

Appellate Case: 11-2003     Page: 19     Date Filed: 08/11/2011 Entry ID: 3817298

BNSF raised the FRSA preemption/preclusion issue in its Motion to Bar Blackwell as to train speed because Blackwell had improperly opined that the train should have been traveling slower than the speed permitted by the FRA. (JA36). This was not raised in the Motion for Summary Judgment because it was not alleged as a basis for negligence.

Appellate Case: 11-2003    Page: 20    Date Filed: 08/11/2011 Entry ID: 3817298

## SUMMARY OF THE ARGUMENT

I. The District Court properly granted summary judgment in favor of BNSF for failure to prove each element of his claim. The only two issues are track conditions and train speed. As discussed in detail in section II, these two issues are governed by FRA regulations which "cover the subject matter." Since BNSF complied with those regulations, liability under the FELA regarding those conditions/speeds is precluded by the FRSA. Even if the FRA regulations do not establish the standard of care, Plaintiff did not produce sufficient evidence of foreseeability, a required element of his negligence claim under the FELA. As noted by the District Court, Plaintiff did not produce evidence of *any* problems with trains traveling over the area at issue before the alleged incident. (JA332) In the end, Plaintiff did not produce any admissible evidence which created a genuine issue of material fact on these issues.

II. The District Court properly granted summary judgment in favor of BNSF on the basis of preclusion. The basis for BNSF's Motion for Summary Judgment was failure to provide evidence of each of the elements of negligence under the FELA. Plaintiff failed to show that BNSF violated the applicable FRA regulations which "covered the subject matter" at issue, and thus precluded his claims. Even if this issue was not directly raised in BNSF's Motion, it would be improper to reverse the District Court on this basis because the District Court properly ruled on the

Appellate Case: 11-2003    Page: 21    Date Filed: 08/11/2011 Entry ID: 3817298

issue, meaning it would be an exercise in futility and waste of judicial resources to reverse it. BNSF did not waive the preclusion issue by not asserting it as an affirmative defense. In order for it to be waived, the Plaintiff would be required to show prejudice or unfair surprise, which he failed to do.

The case law from the Second, Fifth, Sixth, and Seventh Circuits is clear that the FRSA can preclude an FELA claim where the railroad complied with an FRA regulation that "covered the subject matter." No Circuit has held otherwise. FRA regulations cover train speed and the track conditions at issue, and the evidence shows that BNSF was in compliance with those regulations. As such, Plaintiff's claims and expert testimony which sought to impose more stringent requirements on BNSF than the requirements imposed by the FRA were properly held to be precluded.

III. The District Court properly barred Blackwell from: (1) opining that BNSF operated its train at an "unsafe speed" in light of the track conditions; and (2) describing the subsequent remedial measures taken by BNSF. As discussed in section II, above, FRA regulations "cover the subject matter" of train speed and track conditions. Blackwell's opinions were barred for the same reasons Plaintiff's FELA claims were precluded by the FRSA. As for subsequent remedial measures, Plaintiff's current argument that BNSF's subsequent repairs fell under an exception to Federal Rule of Evidence 407 because it "was obligated to make those

Appellate Case: 11-2003    Page: 22    Date Filed: 08/11/2011 Entry ID: 3817298

repairs under FRSA regulations" was never raised before the District Court and has

been waived.

Appellate Case: 11-2003    Page: 23    Date Filed: 08/11/2011 Entry ID: 3817298

# ARGUMENT

## I. The District Court properly granted summary judgment in favor of BNSF because Plaintiff failed to provide evidence of each required element of negligence.

While Plaintiff cites cases from a variety of Circuits, the Eighth Circuit has recently stated "[w]e review the district court's grant of summary judgment in favor of [the railroad] de novo, applying the same standards as the district court." *Francisco v. Burlington N. R.R. Co.*, 204 F.3d 787, 789 (8th Cir. 2000). "In response to the movant's showing, the nonmoving party's burden is to produce specific facts demonstrating 'a genuine issue of material fact such that [his] claim should proceed to trial.'" *Brooks v. Union Pacific R. Co.*, 620 F.3d 896, 899 (8th Cir. 2010) (quoting *Nitro Distrib., Inc. v. Alticor, Inc.*, 565 F.3d 417, 422 (8th Cir. 2009)).

Summary judgment in favor of the railroad is not as rare as Plaintiff would have it. "The Supreme Court did 'not hold [in *Lavender*] that a jury question is presented in every [FELA] case.'" *Lager v. Chicago Northwestern Transp. Co.*, 122 F.3d 523, 525 (8th Cir. 1997) (quoting *Wolfe v. Henwood*, 162 F.2d 998, 1001 (8th Cir.), *cert. denied*, 332 U.S. 773, 68 S.Ct. 88 (1947)). "The plaintiff must still establish negligence of [the] defendant as a contributing cause of injury." *Id*. The Eighth Circuit has made it clear that "[a]lthough FELA is to be liberally construed, it does not make [the railroad] the insurer of [the plaintiff's] safety. [The railroad]

Appellate Case: 11-2003     Page: 24     Date Filed: 08/11/2011 Entry ID: 3817298

can be liable only for its negligence, not for the fact that injuries occurred." *Crown v. Union Pacific R. Co.*, 162 F.3d 984, 986 (8th Cir. 1998) (affirming summary judgment for failure to prove an essential element of negligence).

Most recently in *Brooks*, the Eighth Circuit affirmed summary judgment in favor of the railroad for failure to prove a necessary element of negligence. *Brooks*, 620 F.3d at 900 n.5 ("Because we hold that Brooks did not provide any disputed fact as to whether Union Pacific caused his back injury—one of the necessary elements of a FELA action—we need not consider Brooks's arguments that Union Pacific acted with negligence and that his injury was foreseeable."); *See also Lager v. Chicago Northwestern Transp. Co.*, 122 F.3d 523, 525 (8th Cir. 1997) (affirming summary judgment where *"*a jury would have no evidence from which to conclude that Bradish's alleged assault and battery on Lager was reasonably foreseeable by the railroad. Lager's FELA claim therefore fails as a matter of law.").

Appellant's Brief concludes that "BNSF admitted its track was defective and there was no dispute but that the defective condition caused Cowden's locomotive to drop and injure Cowden." (Appellant's Brief, p.20). Again, the note of "defective track" in a BNSF supervisor's report was based solely on Plaintiff's own allegations regarding the incident. The only track deviations found after the incident were in full compliance with the FRA Track Safety Standards for Class 3 track, the classification which allowed a maximum speed of 40 miles per hour.

Appellate Case: 11-2003     Page: 25     Date Filed: 08/11/2011 Entry ID: 3817298

While Appellant's Brief discusses the general duty to provide a reasonably safe workplace under the FELA (Appellant's Brief, p.20), he does not acknowledge that the limited duties at issue here–track conditions and (if the Complaint is interpreted broadly) train speed–are governed by FRA regulations that cover these subject matters. This was the issue addressed in the District Court's September 7, 2010 order granting summary judgment in favor of BNSF. (JA323-34).

Even if these issues are not entirely governed by the FRA regulations, as the District Court properly found, Plaintiff failed to produce sufficient evidence of the required element of foreseeability. This issue was addressed in the District Court's April 13, 2011 Order denying Plaintiff's Rule 59(e) Motion to Alter/Amend Judgment. (JA581-84). The District Court held that, notwithstanding the FRA regulations, "it still would have granted summary judgment in favor of Defendant based on lack of evidence of negligence," specifically, reasonable foreseeability of harm. (JA583). "As Defendant noted in support of its motion, Plaintiff himself testified that he had not experienced any problems with the track in question in the 150-200 times he had traveled over it in the six months preceding the alleged incident, and data from a track geometry car–a vehicle for inspecting track conditions–taken two months before the incident did not indicate any adverse track conditions. Although Plaintiff did offer some documentary evidence of recorded problems with the track, all of it pre-dated the track geometry readings, and the

Appellate Case: 11-2003     Page: 26     Date Filed: 08/11/2011 Entry ID: 3817298

only testimony addressing these records, which was from Defendant's corporate representative, indicated that these matters would not directly affect track surface conditions, which was the alleged cause of Plaintiff's injuries. Additionally, Plaintiff's evidence of track measurements and remedial measures from after the incident, to the extent these matters might have been otherwise admissible, were entirely irrelevant to whether the accident was reasonably foreseeable. As such, had the Court not concluded that FRSA regulations subsumed Defendant's standard of care with respect to track conditions, it would have found that Plaintiff's evidence failed to raise a genuine issue of material fact as to whether the alleged harm he suffered was reasonably foreseeable." (JA583-84).

Plaintiff ignores the test for "foreseeability of harm" in FELA cases. The goal of the FELA is not to "cloak a yardman dealing with moving cars with the same mantel of safety as a clerical worker in a ticket office, but simply to provide each employee with as safe a work environment as possible *given the nature and responsibility of each job*." *Ragsdell v. Southern Pacific Transportation Co.*, 688 F.2d 1281 (9th Cir. 1982) (quoting *Bailey v. Central Vermont Railway*, 319 U.S. 350, 352-3, 63 S.Ct. 1062 (1943)) (emphasis added). A railroad's conduct must be viewed in light of the hazards of the specific workplace in which the plaintiff works. *Padgett v. Southern Railway Co.*, 396 F.2d 303, 306 (3rd Cir. 1968). "Under the negligence standard, '[t]he employer's conduct is measured by the

degree of care that persons of ordinary, reasonable prudence would use under similar circumstances and by what these same persons would anticipate as resulting from a particular condition.' In other words, Burlington Northern owed a duty of care to [the plaintiff] only if there was 'reasonable foreseeability of harm.'" *Francisco v. Burlington Northern R.R. Co.*, 204 F.3d 787, 789 (8th Cir. 2000) (quoting *Ackley v. Chicago & North Western Transp. Co.*, 820 F.2d 263, 267 (8th Cir. 1987)).

Under this standard, the Eighth Circuit has affirmed summary judgment in favor of the railroad where "a jury would have no basis on which to conclude that Burlington Northern reasonably could have foreseen harm to an employee..." *Id.* at 790; *See also Vidlak v. Burlington Northern R.R.*, 16 F.3d 1229 (Table), 1993 WL 528041, 1 (8th Cir. 1993) (affirming summary judgment where "Vidlak has failed to offer any evidence of foreseeability."); *Sportsman v. BNSF Ry. Co.*, 2011 WL 2134373, 7 (E.D.Mo. May 26, 2011) (slip copy) ("[T]he record is devoid of any evidence showing that BNSF had any knowledge that the seat belt worn by Sportsman was defective in any manner prior to the MVA.").

Appellant's Brief concludes that "[g]iven the repeated problems the area suffered in the year preceding Cowden's injury, a reasonable person could conclude that this track remained or again might become defective and provide insufficient support to a passing train, causing a 'mishap or injury' to its

Appellate Case: 11-2003    Page: 28    Date Filed: 08/11/2011 Entry ID: 3817298

passengers." (Appellant's Brief, p.22). As discussed above, no previous "mishap or injury" occurred. Plaintiff, himself, admitted he no problems with this area in the six-month period prior to his alleged injury. (JA113 ¶3-5; JA189 ¶ 3-5). Nor was he aware of any other train crews having trouble there. (JA113 ¶7-9; JA189 ¶ 7-9). In short, even in the face of BNSF's Motion for Summary Judgment, Plaintiff could not point to any evidence that any similar problems had occurred prior to his alleged incident. All he can cite is "water and mud conditions" (Appellant's Brief, p.22), which necessarily occur in nature. Under the facts, the District Court found dispositive the fact that "there is no evidence in the record that locomotives—other than the one in which Plaintiff was allegedly injured—ever experienced *any problems* traveling over that specific section prior to Plaintiff's injury." (JA332) (emphasis added). Contrary to Plaintiff's assertion, the District Court did not "requir[e] that the same incident have occurred in the same area of track to prove foreseeability" (Appellant's Brief, p.23), it acknowledged that there had not been "*any* problems" in that area before January 14, 2008. (JA332).

In any case, the issues raised by Plaintiff in his Complaint (*i.e.*, track conditions and train speed) are governed by FRA regulations which cover the subject matter and preclude FELA liability on the part of BNSF because it complied with those regulations.

**II. The District Court properly granted summary judgment in favor of BNSF on the basis of FRSA preclusion.**

The District Court stated in its April 13, 2011 order:

> Plaintiff was only asserting that Defendant was negligent with respect to two related matters—operating the locomotive at an excessive speed and under poor track conditions, and the Court narrowly concluded that because specific FRSA regulations govern railroad speed limits and track conditions, those regulations supplied the standard of care for Plaintiff's FELA negligence claim.

(JA582).

**A. The District Court properly granted summary judgment on grounds asserted by BNSF; Even if the grounds were not asserted, the Court did not err in ruling on dispositive issues.**

Plaintiff argues that summary judgment was not proper on the federal preclusion issues because these issues were not asserted by BNSF. (Appellee's Brief, p.27). However, even the single case cited by Plaintiff supports the District Court's grant of summary judgment, even if it was not raised by the parties. As discussed below, (1) the issue was raised by BNSF's Motion for Summary Judgment, and (2) even if it was not, it would be an exercise in futility and a waste of judicial resources to reverse on this basis because the District Court was correct in its ruling.

First, the issues ruled upon by the Court were raised in BNSF's motion. BNSF specifically moved the court for summary judgment on Plaintiff's claims based on the lack of evidence of negligence under the FELA. (JA23; JA115). The District

Appellate Case: 11-2003    Page: 30    Date Filed: 08/11/2011 Entry ID: 3817298

Court's Order stated that "Defendant moved for summary judgment on this claim on grounds that Plaintiff failed to come forward with sufficient evidence of Defendant's negligence, and it was on precisely this basis that the Court granted summary judgment." (JA584). "Plaintiff had a full and fair opportunity to present evidence of Defendant's negligence in response to Defendant's motion for summary judgment on his FELA claim, and his failure to do so … was what ultimately led to the Court's grant of summary judgment." (JA584).

The District Court's Order discussed the doctrine of FRSA preclusion in the context of Plaintiff's failure to produce any evidence that BNSF breached a duty, *i.e.*, that it did not violate any applicable FRA regulation which covered the subject matter at issue. Although it is true a trial court may not grant summary judgment without a motion, it "may assist, through pretrial proceedings, in sharpening the issues." *Denton v. Mr. Swiss of Missouri, Inc.*, 564 F.2d 236 (8th Cir. 1977). The Eight Circuit's concern with so called *sua sponte* grants of summary judgment is with "a trial court's tendency to engage in issue determination, rather than issue identification." *Interco Incorporated v. National Surety Corp.*, 900 F.2d 1264, 1269 (8th Cir. 1990). All that is needed for a grant of summary judgment is for the party against whom judgment is entered to have had an opportunity to demonstrate why summary judgment should not be granted. *Id.* Plaintiff had such an opportunity both at the summary judgment stage and in his Rule 59 motion.

Appellate Case: 11-2003     Page: 31     Date Filed: 08/11/2011 Entry ID: 3817298

The District Court ruled on exactly the issue that was briefed by the parties–lack of any evidence of negligence. The District Court succinctly summarized Plaintiff's allegations of negligence that came to light during the summary judgment proceedings: that BNSF failed to repair a section of track or failed to reduce the speed limit. (JA330). The District Court discussed specific FRA regulations that applied and rightly noted that a violation of these regulations was necessary to prove negligence under the FELA in this particular case. (JA330). The District Court noted that the regulations were relevant to Plaintiff's allegations regarding speed "in that Plaintiff cannot succeed on this argument unless he can demonstrate that FRSA regulations required the issuance of such [a slow] order." (JA331). The District Court focused on Plaintiff's own allegations in order to show what specific evidence would have been sufficient to show negligence in this case–a clear example of issue identification, not issue determination.

The District Court highlighted the fact that the testimony of the corporate designee (relied upon heavily by Plaintiff) did not present sufficient evidence of negligence. Rather, Thornburg testified "it was proper for Defendant to continue to allow train travel over the track at the designated speeds, and there is no evidence in the record that locomotives–other than the one in which Plaintiff was allegedly injured–ever experienced any problems travelling over that specific section prior to Plaintiff's injury." (JA332). The testimony of Plaintiff, Thornburg, and Plaintiff's

Appellate Case: 11-2003     Page: 32     Date Filed: 08/11/2011 Entry ID: 3817298

expert Blackwell (the entirety of Plaintiff's evidence in this case) did not present a genuine issue of material fact concerning negligence in this matter.

In the end, it was Plaintiff who brought forth the issue of regulatory violations in his Opposition to Summary Judgment. (JA197). Admissible evidence of an FRA violation would have likely saved Plaintiff's claims from summary judgment in this case, but he failed to produce any such evidence. As a result, the District Court's Order should not be disturbed.

Second, the District Court properly applied the doctrine of preclusion by federal law even if it was not directly raised. In the single case cited in Appellant's Brief, the Eighth Circuit stated

> Met Council asserts that even if the retaliation claim was not properly raised in its summary judgment motion, summary judgment is appropriate because the claim is precluded as a matter of law if the district court is correct that Heisler is not a qualified individual with a disability. Met Council's premise is correct—*it would be an exercise in futility and a waste of judicial resources to reverse a grant of summary judgment on an issue not properly raised in the summary judgment motion if the district court's findings on properly addressed issues foreclose the unraised issue*.

*Heisler v. Metropolitan Council*, 339 F.3d 622, 632 (8th Cir. 2003) (emphasis added). There, however, the district court was wrong in its findings. Such is not the case here. As discussed below, the District Court's rulings on federal preemption/preclusion were proper, and there is no basis for reversal.

**B. BNSF did not waive any claim to preclusion by not asserting it as an affirmative defense.**

Appellate Case: 11-2003    Page: 33    Date Filed: 08/11/2011 Entry ID: 3817298

Plaintiff asserts that BNSF was required to raise the preclusion issue as an affirmative defense under Rule 8(c), or else it was waived. (Appellee's Brief, p.27). Plaintiff's argument must fail because preemption/preclusion is not one of the enumerated Affirmative Defenses in Rule 8(c). Fed.R.Civ.Pro. 8(c)(1). As such, there can be no waiver for failure to raise it.

Also, even if federal preemption/preclusion is a waivable affirmative defense, Plaintiff cannot argue that he has been prejudiced or unfairly surprised. "When an affirmative defense is raised in the trial court in a manner that does not result in unfair surprise, ... technical failure to comply with Rule 8(c) is not fatal." *Financial Timing Publ'ns, Inc. v. Compugraphic Corp.*, 893 F.2d 936, 944 n.9 (8th Cir.1990) (quoting *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855 (5th Cir. 1983)). In fact, affirmative defenses can been properly raised for the first time in a summary judgment motion where there is no prejudice. *Stoebner v. Parry, Murray, Ward & Moxley*, 91 F.3d 1091, 1093-94 (8th Cir.1996) (per curiam). Where the plaintiff has not provided evidence of prejudice, the defense is not waived. *Id.* at 1094.

Here, Plaintiff has known since at least late 2009 that FRA regulations were implicated by his allegations, as he asked his expert at that time to opine as to whether BNSF had complied with any applicable FRA regulations. (JA81 at p.26:25-p.27:12). The issue of FRSA preclusion was then raised by BNSF in its Motion to Bar Blackwell on June 11, 2010. (JA36). BNSF's Motion for Summary

Appellate Case: 11-2003     Page: 34     Date Filed: 08/11/2011 Entry ID: 3817298

Judgment was filed on the same day. (JA19-24). As such, Plaintiff cannot argue unfair surprise or prejudice, and, even assuming this issue is a waivable affirmative defense, it was not waived here.

### C. The FRSA does preclude Plaintiff's claims under the FELA regarding track conditions and train speed.

The District Court summarized Plaintiff's claim as "failing to repair the section of track on which he allegedly sustained his injuries, or in the alternative, for failing to reduce the applicable speed limit." (JA330). The District Court was correct in ruling that "if an FRSA regulation directly addresses the type of harm that ultimately resulted, then compliance with that regulation will preclude a finding of liability under the FELA." (JA329). Stated another way, the FRA regulations regarding track conditions and train speed "cover the subject matter," and a railroad cannot be found to be negligent when it complies with those safety regulations.

### 1. The protective nature of the FELA and the Federal common law of FELA liability do not prevent a railroad from defending itself by showing compliance with an FRA regulation that covers the subject matter at issue.

Plaintiff cites many cases from a variety of jurisdictions for general FELA propositions regarding liability. (Appellant's Brief, p.30-33). However, none of these cases involved alleged rough track or excessive train speeds. *Consolidated Rail Corp. v. Gottshall*, 512 U.S. 532, 114 S.Ct. 2396 (1994) (negligent infliction

Appellate Case: 11-2003    Page: 35    Date Filed: 08/11/2011 Entry ID: 3817298

of emotional distress from seeing a friend die of a heart attack); *CSX Transp., Inc. v. McBride*, 131 S.Ct. 2630, 2632 (2011) (hand injury while switching railroad cars, no alleged violation of any regulation); *Urie v. Thompson*, 337 U.S. 163, 166, 69 S.Ct. 1018, 1023 (1949) (alleged silicosis from inhaling silica dust in locomotives); *Morant v. Long Island R.R.*, 66 F.3d 518 (2nd Cir. 1995) (finding that blue-flag regulation did not apply to the plaintiff); *Kernan v. American Dredging Co.*, 355 U.S. 426, 427, 78 S.Ct. 394, 395 (1958) (seaman died in a fire caused by the violation of a navigation rule); *Atchison, Topeka and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410 (1987) (alleged emotional breakdown from harassment by fellow employees).

For the first time, Plaintiff argues in his Brief that "[t]he FELA expressly supersedes any rule or regulation that has the effect of exempting a railroad company from liability. 45 U.S.C. § 55. Thus, a railroad cannot rely on an FRSA regulation to exempt itself from FELA liability." (Appellant's Brief, p.32). Procedurally, because this issue was never before the District Court, it has been waived. Substantively, BNSF is not aware of any case law interpreting section 55 in this manner, nor has Plaintiff cited any such case law. In fact, this argument is directly contrary to Plaintiff's earlier position that federal preemption/preclusion of an FELA claim through compliance with a federal safety regulation is an affirmative defense. In any case, "Congress enacted section 5 [45 U.S.C. § 55] …

Appellate Case: 11-2003     Page: 36     Date Filed: 08/11/2011 Entry ID: 3817298

to prevent employers being sued under section 1 from claiming as a defense that the employees bringing suit had contracted away their rights under the FELA, and therefore were not eligible to recover damages under the Act." *Lewy v. Southern Pacific Transp. Co.*, 799 F.2d 1281, 1294 (9th Cir. 1986). As such, section 55 is generally cited and discussed in regard to contractual releases signed by the employee. It has no bearing on whether the railroad's compliance with a safety regulation precludes the plaintiff's FELA negligence claim.

One of the cases cited by Plaintiff discussed the Federal Safety Appliance Act, noting that "BN has a duty under the Federal Safety Appliance Act (FSAA) to ensure that the cars used on its tracks are equipped with properly functioning brakes, see 45 U.S.C. § 11, and its failure to do so creates an unsafe workplace in violation of FELA." *Burlington Northern R. Co. v. Farmers Union Oil Co. of Rolla*, 207 F.3d 526, 532 (8th Cir. 2000). "Even assuming that BN violated the FSAA, however, a violation of this statute does not, by itself, support a finding of negligence. … [the plaintiff must also show] that the railroad could have detected the defective brake by inspection or that the defect arose prior to the railroad's delivery of the car to the lessee." *Id*. at 533-34. No such facts were presented here.

Appellant's Brief repeatedly tries to analogize preemption/preclusion under the LIA with preemption/preclusion under the FRSA. These are separate statutes with separate preemption clauses. "The preemptive effect of the Railroad Safety Act is

Appellate Case: 11-2003    Page: 37    Date Filed: 08/11/2011 Entry ID: 3817298

different from that of the [Locomotive] Inspection Act. … [U]nlike the [Locomotive] Inspection Act, the Railroad Safety Act preempts only those state laws where the federal government has acted with respect to the same 'subject matter.'" *Marshall v. Burlington Northern, Inc.*, 720 F.2d 1149, 1153 (9th Cir. 1983). For example, Plaintiff concludes that "compliance with the [Locomotive Inspection] Act does not preclude an FELA action based on a defective locomotive, even though locomotive safety is the subject of the Act," an argument which is taken out of context and without explanation. (Appellant's Brief, p.34). Plaintiff cites *Weaver v. Mo. Pac. R.R. Co.*, 152 F.3d 427 (5th Cir. 1998) for this proposition. There, the plaintiff was hit with a bottle thrown by someone near the tracks as his train rolled by, causing injuries. The plaintiff alleged Missouri Pacific failed to install window screens or air conditioning in the locomotive at issue, in violation of the FELA. The sole issue on appeal was whether "the District Court erred in allowing the jury to consider the question of whether the [Railroad] was negligent in not equipping its locomotive with air conditioning and/or screens because the jury's consideration of such conduct is preempted by the Locomotive Inspection Act." *Id*. at 429. The railroad argued "that the LIA and its regulations regarding locomotive cabin temperature and ventilation conditions 'totally occup[y] the field' of locomotive safety, pretermitting liability under FELA for not installing the air conditioners and/or protective screens." *Id*. at 429. The FRA

Appellate Case: 11-2003     Page: 38     Date Filed: 08/11/2011  Entry ID: 3817298

regulations at issue required that "[c]ab windows of the lead locomotive shall provide an undistorted view of the right-of-way for the crew from their normal position in the cab" 49 C.F.R. § 229.119(b); and "[t]he cab shall be provided with proper ventilation and with a heating arrangement that maintains a temperature of at least 50 degrees Fahrenheit 6 inches above the center of each seat in the cab" 49 C.F.R. § 229.119(d)(1998). *Id*. at 429. "The regulations do *not* require air conditioning and/or protective screens." *Id*.   The court held that

> [t]he LIA regulations relied upon by the Railroad are not premised on providing safety from such dangers; rather, their focus is on ensuring proper ventilation, a minimum temperature, and an undistorted view. … Restated, compliance with these regulations, in the light of the evidence presented at trial regarding the known dangers presented to locomotive engineers traveling through the southern States in the summer, does not address the safety of those engineers from known dangers, such as stonings. In sum, in this regard, the LIA and accompanying regulations do not totally occupy the field regarding locomotive safety.

*Id*.

It must be recognized that *Weaver* was a "failure to install" case, not a "failure to maintain" as alleged here. As discussed below, FRA regulations directly on point covered the track conditions and speed limits at issue, and BNSF complied with those regulations. Cases with analogous facts have granted summary judgment in favor of the railroad, as was properly done in this case.

As noted above, the FRSA has its own preemption clause:

Appellate Case: 11-2003     Page: 39     Date Filed: 08/11/2011 Entry ID: 3817298

(a) National uniformity of regulation.

    (1) Laws, regulations, and *orders* related to railroad safety … shall be nationally uniform to the extent practicable.

    (2) A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters) … prescribes a regulation or issues an order *covering the subject matter* of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order

        (A) is necessary to eliminate or reduce an essentially local safety or security hazard;

        (B) is not incompatible with a law, regulation, or order of the United States Government; and

        (C) does not unreasonably burden interstate commerce.

(b) Clarification regarding State law causes of action.

    (1) Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party

        (A) has failed to comply with the Federal standard of care established by a regulation or order issued by the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), covering the subject matter as provided in subsection (a) of this section;

        (B) has failed to comply with its own plan, rule, or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or

        (C) has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

49 U.S.C.A. § 20106 (2007).[1]

---

[1] Section (b) of this statute was added in 2007. Plaintiff asserts that "Section 20106 was amended in 2007 to reduce its preemptive scope as interpreted by the courts." (Appellant's Brief, p.39 n.10). The Eighth Circuit has applied the amended

Appellate Case: 11-2003   Page: 40   Date Filed: 08/11/2011 Entry ID: 3817298

In *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 113 S.Ct. 1732 (1993), the

Supreme Court held that regulations promulgated by the FRA pursuant to the

FRSA "may pre-empt any state law, rule, regulation, order, or standard relating to

railroad safety." 507 U.S. at 664. Although *Easterwood* involved FRSA

preemption of a state law, courts across the country have extended the Supreme

Court's rationale and holding, and have allowed FRSA preclusion of FELA claims.

*See e.g.*, *Waymire v. Norfolk & W. Ry. Co.*, 218 F.3d 773 (7th Cir. 2000), cert.

denied 531 U.S. 1112, 121 S.Ct. 856 (2001); *Lane v. CSX Transp., Inc.*, 241 F.3d

439 (5th Cir. 2001); *In re Amtrak "Sunset Limited" Train Crash in Bayou Canot*,

188 F.Supp.2d 1341 (S.D. Ala. 1999); *Rice v. Cincinnati, N.O. & Pac. Ry. Co.*, 955

F.Supp. 739 (E.D. Ky. 1997); *Thirkill v. J.B. Hunt Transp., Inc.*, 950 F.Supp. 1105

(N.D. Ala. 1996); *Key v. Norfolk So. Ry. Co.*, 228 Ga. App. 305, 491 S.E.2d 511

(Ct. App. Ga. 1997).

Compliance with the applicable FRA regulation which "covers the same subject

matter" preempts a state law claim and precludes an FELA claim based on the

---

preemption provision of the FRSA and still concluded that the train speed claim
was preempted. *Duluth, Winnipeg and Pacific Ry. Co. v. City of Orr*, 529 F.3d 794,
798 (8th Cir. 2008). Both the Sixth and Tenth Circuits have directly addressed the
2007 amendment and concluded that it does not change the preemption/preclusion
analysis when the railroad is in compliance with the applicable federal regulation.
*Nickels v. Grand Trunk Western Railroad, Inc.*, 560 F.3d 426, 432 (6th Cir. 2009),
*cert den.* 130 S.Ct. 1136 (FELA claim regarding ballast precluded by the FRSA);
*Henning v. Union Pacific R. Co.*, 530 F.3d 1206, 1211 (10th Cir. 2008).

Appellate Case: 11-2003    Page: 41    Date Filed: 08/11/2011 Entry ID: 3817298

railroad's failure to meet some other standard. *See e.g.*, *Norfolk Southern Rwy. Co. v. Shanklin*, 529 U.S. 344, 120 S. Ct. 1467 (2000); *Rice*, 955 F.Supp. at 740. Plaintiff's FELA claim regarding track conditions and train speed amounts to nothing more than his conclusory statement that the track was "defective" and the train was going "too fast." Allowing such claims to proceed to juries would result in inconsistencies between jurisdictions. A condition or speed deemed unreasonable by one jury, could be allowed by another jury. Such non-uniform standards would thwart the intent of Congress to ensure uniformity in railroad safety. *See Lane*, 241 F.3d at 443-44 (allowing juries to decide negligence based upon an area covered by FRSA regulations would undermine national uniformity of railroad safety regulations); *Rice*, 955 F.Supp. at 740 ("To the extent they are inconsistent, the FRSA will supersede the FELA based on the policy embodied in the FRSA to ensure uniformity in law pertaining to railway safety.").

Railroading is an integrated activity. A change introduced at one point in the system may have unintended and undesired consequences elsewhere. A proposal that seems sensible on its face may have serious consequences not readily apparent to persons–such as jurors–who lack industry expertise. The special expertise of the FRA in railroad regulation enables it better to perceive these interrelationships and anticipate these consequences, making it the only agency capable of competently regulating this complex system. It therefore is extremely important that the FRA be

Appellate Case: 11-2003     Page: 42     Date Filed: 08/11/2011 Entry ID: 3817298

the sole agency involved in railroad regulation, and that all forms of piecemeal

regulation, including regulation by tort litigation, be avoided.[1]

> Implicit in each major area of regulation is the threefold objective of protecting passengers, persons along the right-of-way, and railroad employees. Protection of the public generally and employees in particular is, of necessity, an integrated undertaking. As a general rule, it is not possible to regulate an individual hazard without impacting on other, related working conditions, nor without impacting on the safe transportation of persons and property. Therefore, it is essential that the safety of railroad operations be the responsibility of a single agency and that that agency undertake new initiatives in an informed and deliberate fashion, weighing the impact of particular proposals on longstanding industry practices and preexisting regulations.
>
> …
>
> In these traditional areas of railroad safety, FRA has developed a special expertise which makes this agency uniquely qualified to play the primary role in the Federal Government's efforts to assure *safe employment and places of employment for railroad employees* engaged in activities related to railroad operations.
>
> …
>
> FRA has now exercised its statutory authority with respect to each of these regulatory fields by actual rulemaking. While it is expected that additional regulatory initiatives may be undertaken as necessary, in each of the major regulatory fields, *it is the judgment of the agency that piecemeal regulation of individual hazards in any of the three regulatory fields by any other agency of the government would be disruptive and contrary to the public interest.*

43 Fed. Reg. 10585-86 (March 14, 1978), Federal Railroad Administrative Docket

No. ROS-1, Notice 3, Railroad Occupational Safety and Health Standards,

---

[1] "The Committee does not believe that safety in the Nation's railroads would be advanced ... by subjecting the national rail system to a variety of enforcement in 50 different judicial and administrative systems." H.R. Report No. 91-1194, reprinted in 1970 U.S.C.C.A.N. 4104, 4109.

Appellate Case: 11-2003     Page: 43     Date Filed: 08/11/2011 Entry ID: 3817298

Termination (the " FRA Policy Statement") (emphasis added). Pursuant to his FRSA responsibilities, the Secretary of Transportation promulgated numerous regulations regarding railroad safety, including Part 213, at issue here. 49 C.F.R. § 213.

Under the express preemption provision of the FRSA, a plaintiff can bring an FELA action *unless* the Secretary has prescribed a regulation or issued an order "covering the subject matter." 49 U.S.C. § 20106Here, the Secretary has promulgated a regulation on maximum speed limits, 49 C.F.R. § 213.9 (A1), and track conditions, 49 C.F.R. §§ 213.55 (A2), 213.63 (A3). These requirements are mandatory. They "cover the subject matter" of train speed and track conditions and thus supplant and displace all other standards that can be imposed by a court. Since Plaintiff has failed to provide evidence that BNSF violated these regulations, summary judgment was properly granted in favor of BNSF.

Despite the wealth of case law to the contrary, Plaintiff asserts that preclusion "is beyond the scope of any other Circuit Court decision." (Appellant's Brief, p.i). However, he later acknowledges that three Circuits have found an FELA claim to be precluded by the FRSA. (Appellant's Brief, p.40). One district court from within the Eighth Circuit has noted that "[a]s a threshold matter, the Court must consider whether the Federal Railroad Safety Act ("FRSA") precludes Plaintiff's FELA claims." *Dickerson v. Staten Trucking, Inc.*, 428 F.Supp.2d 909, 913

Appellate Case: 11-2003     Page: 44     Date Filed: 08/11/2011 Entry ID: 3817298

(E.D.Ark. 2006). Another district court has stated succinctly "the maintenance, repair, and inspection of track conditions is directly and comprehensively covered by the FRSA. Part 213 of the FRSA addresses the minimum requirements for track safety standards for: (1) appropriate operating *speed limits*, § 213.9, (2) *gage of the tracks*, § 213.53, (3) *track alignment*, § 213.55; (3) maintenance of *track surfaces*, § 213.63; (4) ballast, § 213.103; (5) crossties, § 213.109; (6) rail end mismatch, § 213.115; (7) rail joints, § 213.121, and (8) rail fastening systems, § 213.127. … This is precisely the subject matter of FIC's negligence claim; thus, it is preempted." *Federal Ins. Co. v. Burlington Northern and Santa Fe Railway Co.*, 270 F.Supp.2d 1183, 1187-88 (C.D.Cal. 2003). Stated another way, in those instances in which an action for negligence against a railroad will lie, FRA regulations establish the applicable standard of care.

The Eighth Circuit, itself, has recognized the preclusive/preemptive effect of the FRSA. Citing *Easterwood* and *Shanklin*, the Eighth Circuit has recognized that "[t]he [FRSA] gives the Secretary of Transportation broad powers 'to promote safety in all areas of railroad operations.'" *Iowa, Chicago & Eastern R.R. Corp. v. Washington County, Iowa*, 384 F.3d 557, 559 (8th Cir. 2004) (quoting 49 U.S.C. § 20101). It further quoted the FRSA preemption provision:

> Laws ... related to railroad safety ... shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law ... related to railroad safety ... until the Secretary of Transportation

Appellate Case: 11-2003    Page: 45    Date Filed: 08/11/2011 Entry ID: 3817298

> prescribes a regulation or issues an order *covering the subject matter* of the state requirement.

*Id.* at 560 (quoting 49 U.S.C. § 20106).

The Eighth Circuit earlier held that an excessive speed claim against the railroad was preempted. In *St. Louis Southwestern Ry. Co. v. Pierce*, 68 F.3d 276, 278 (8th Cir. 1995), the counterplaintiff alleged that the train was operating at an excessive speed for the conditions existing at the time of the accident. The train had been traveling at 49-50 miles per hour at the time of the alleged crossing collision, even though the FRA speed limit was 60 miles per hour. *Id.* at 278. Even though the railroad had imposed its own speed limit of 45 miles per hour, which was admittedly exceeded at the time of the accident, summary judgment was still affirmed in favor of the railroad. The district court relied on *Easterwood*, which stated that "in the context of the overall structure of the regulations, the speed limits must be read as not only establishing a ceiling, but also precluding additional state regulation of the sort which [plaintiff] seeks to impose on [defendant]." *Id.* at 278. The Eighth Circuit affirmed that "[p]reemption, under the facts presented here, is clear not only because of the dictates of *Easterwood*, but decisions of other courts as well." *Id.* (citing *Wright v. Illinois Cent. R.R. Co.,* 868 F.Supp. 183, 186 (S.D.Miss. 1994) (internal policies of railroad which are inconsistent with the controlling federal speed regulations are preempted); *Williams v. Burlington N. R.R. Co.*, 849 F.Supp. 682 (E.D.Ark. 1994) (excessive speed claim preempted);

Appellate Case: 11-2003     Page: 46     Date Filed: 08/11/2011 Entry ID: 3817298

*Bowman v. Norfolk S. Ry. Co.*, 832 F.Supp. 1014, 1017 (D.S.C. 1993) (evidence of railroad's internal policies about train speed deemed irrelevant); *Watson v. Rail Link, Inc.*, 826 F.Supp. 487, 490 (S.D.Ga. 1993) (court granted summary judgment for railroad on plaintiff's excessive speed claim); *Eldridge v. Missouri Pac. R.R.*, 832 F.Supp. 328, 330 (E.D.Okla. 1993) (speed claim preempted)).

The case law is also clear that claims of negligence regarding train speed are preempted/precluded by the FRSA if they attempt to impose additional regulations in an area already occupied by the FRSA or its accompanying regulations. *CSX Trans., Inc. v. Easterwood*, 507 U.S. 658, 664-65 (1993). "[T]rain speed is the subject of extensive federal regulation. 49 CFR 213.9 (1991). Because this issue is preempted by federal regulation, respondent is under no duty to moderate the speed of its trains beyond that speed allowed in the regulations." *Walker v. St. Louis-Southwestern Ry. Co.*, 835 S.W.2d 469, 474 (Mo.App. E.D. 1992); *See also Waymire v. Norfolk and Western Rwy. Co.*, 218 F.3d 773 (7th Cir. 2000) (traveling within FRSA prescribed speed limits is not culpable negligence). In the current case, any allegations regarding train speed are precluded because the train in question was traveling at or below the speed limit established by the federal regulations. *See, e.g., Duluth, Winnipeg and Pacific Ry. Co. v. City of Orr*, 529 F.3d 794, 798 (8th Cir. 2008) (FRSA preempted state law limiting the speed of trains passing through Orr, Minnesota); *St. Louis Southwestern Ry. Co. v. Pierce*,

Appellate Case: 11-2003    Page: 47    Date Filed: 08/11/2011 Entry ID: 3817298

68 F.3d 276, 278 (8th Cir. 1995); *O'Bannon v. Union Pacific R.R. Co.*, 960 F. Supp. 1411 (W.D. Mo. 1997) (excessive speed claim in crossing accident preempted).

In *Munns v. CSX Transp., Inc.*, 2009 WL 805133 (N.D.Ohio 2009) (unpublished) (A5), the FELA plaintiff claimed that his back condition was caused, in part, by having to ride over "rough and defective" track. *Id*. at *3. His proof was that CSX often issued "slow orders" for portions of the track over which he traveled, and the ride in those areas was rougher. *Id*. The court noted that the FRA's "Track Safety Standards" relate to track maintenance, inspection and repair. *Id*. "Maximum allowable speeds are set under 49 C.F.R. § 213.9(a). If a segment of track does not meet the requirements, it is reclassified to the next lower classification for which it meets the requirements. 49 C.F.R. § 213.9(b)." *Id*. However, it was not alleged that CSX violated any of the Track Safety Standards. "He claims, rather, that 'slow-ordered' track was rough-riding track, which resulted in his injuries." *Id*.

The court concluded that "[i]n light of *Nickels* [*v. Grand Trunk Western Railroad, Inc.*, 560 F.3d 426 (6th Cir. 2009) cert. den. 130 S.Ct. 1136], the Track Safety Standards preempt plaintiff's FELA negligence claim. Indeed, the need for preemption with regard to these standards is even greater with regard to Track Safety Standards than with the rather generalized ballast requirements at issue in

Appellate Case: 11-2003    Page: 48    Date Filed: 08/11/2011 Entry ID: 3817298

that case. *Uniformity across state lines is essential for rail traffic to flow with a maximum of safety and minimum of disruption due to track conditions. Plaintiff cannot, therefore, recover under the FELA on the basis that he was required to ride over slow-ordered track.*" *Id.* (emphasis added). Such is the case at bar.

2. **Plaintiff's argument that "there is no intolerable conflict between FELA common law liability and the FRSA or other basis for concluding that the FRSA supersedes the FELA" is a red herring.**

If Plaintiff's argument that compliance with FRA regulations can never preclude an FELA claim was true, then no case law would exist in which an FELA claim was precluded by compliance with the applicable FRA regulation. As discussed in detail above, this is clearly not the case.

One court discussed this precise issue in detail. *Rice v. Cincinnati, New Orleans & Pacific Ry. Co.*, 955 F.Supp. 739 (E.D.Ky. 1997). In *Rice*, the court stated "[b]ecause this case is based on the FELA, the court is not faced with a typical pre-emption issue. In considering this motion, however, the court must reconcile the two federal statutes. To the extent that they are inconsistent, the FRSA will supersede the FELA based on the policy embodied in the FRSA to ensure uniformity in law pertaining to railway safety." *Id.* at 740. The court recognized that the FRA regulations "codified in 49 C.F.R. § 213.9(a) set maximum allowable speeds for trains based on the class of track on which they travel." *Id.* at 740. The court cited *Easterwood* for the proposition that "speed limits established under the

FRSA preclude inconsistent state regulation of train speed." *Id*. "[T]his is not a state law case; the FELA is the sole remedy for this plaintiff. However, *the same rationale that supports pre-emption of an unsafe speed argument in a state law case also indicates that speed regulations adopted pursuant to the FRSA should supersede an unsafe speed argument in this FELA case*." *Id*. at 741. "*If a plaintiff were allowed to argue unsafe speed under the FELA but not under state law, the railroad safety uniformity intended by Congress would be compromised*. The FRSA therefore supersedes plaintiff's FELA action insofar as it asserts that the train was traveling at an unsafe speed, provided that the speed is in keeping with the FRSA regulation." *Id*. (citing *Thirkill v. J.B. Hunt Transp., Inc.*, 950 F.Supp. 1105, 1107-08 (N.D.Ala.1996) (FRSA speed regulation foreclosed an FELA claim based on unsafe speed)).

   As such, the FRSA supersedes the FELA where the FRSA and the regulations promulgated thereunder by the FRA are necessary to ensure *uniformity in law* (*i.e.*, a conflict) regarding railway safety. As stated in *Rice*, this includes allegations regarding train speed. For the same reason, it also applies to track surfaces (49 C.F.R. § 213.63) and track alignment (49 C.F.R. § 213.55), as held in *Federal Ins. Co. v. Burlington Northern and Santa Fe Railway Co.*, 270 F.Supp.2d 1183, 1187-88 (C.D.Cal. 2003).

Appellate Case: 11-2003    Page: 50    Date Filed: 08/11/2011 Entry ID: 3817298

Plaintiff repeatedly cites *Atchison, Topeka and Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 107 S.Ct. 1410 (1987) (alleged emotional breakdown from harassment by fellow employees), which does not mention the FRSA. Rather, it was in regard to the Railway Labor Act, which governs whether a dispute between the employee and employer is subject to mandatory arbitration. As such, it cannot be cited for the proposition that "there is no intolerable conflict between the FRSA and FELA," as Plaintiff has done. (Appellant's Brief, p.38).

The FRSA and the precise FRA regulations at issue here have repeatedly and consistently been held to have preclusive effect on FELA claims. Plaintiff's arguments to the contrary, which cite no case law on point, are of no consequence. These regulations "speak directly to the question addressed," which is whether BNSF acted negligently in maintaining its track conditions and train speeds. It is undisputed that these issues are governed by 49 C.F.R. §§ 213.9, 213.55, and 213.63. BNSF was in compliance with those regulations. As such, the case law is clear that an FELA claim regarding these issues is precluded by the FRSA.

### 3. Multiple courts have found that FRA regulations preclude FELA claims similar to Plaintiff's claims here.

Plaintiff asserts that the Eighth Circuit has not "addressed the question of whether the FRSA and its regulations preclude an FELA claim similar to Cowden's." (Appellant's Brief, p.39). As discussed above, the Eighth Circuit, has recognized the preclusive/preemptive effect of the FRSA in *Chicago & Eastern*

Appellate Case: 11-2003    Page: 51    Date Filed: 08/11/2011 Entry ID: 3817298

*R.R. Corp. v. Washington County, Iowa*, 384 F.3d 557, 559 (8th Cir. 2004), and

further recognized that FRSA preemption can have application in FELA claims. *Id*.

at 560 (citing *Tyrrell v. Norfolk S. Ry.*, 248 F.3d 517, 522 (6th Cir. 2001) (the

FELA plaintiff alleged he was injured because of the railroad's violation of an

Ohio regulation, which the railroad argued was preempted by federal law)).

   Plaintiff acknowledges that three Circuits have found an FELA claim to be

precluded by the FRSA. (Appellant's Brief, p.40). These were the cases relied

upon by the District Court here in granting summary judgment. (JA329). Plaintiff

ignores the wealth of district court cases, cited herein and by the District Court in

its Orders (JA320; JA329), which have held the same. *See e.g.*, *Rice v. Cincinnati,

New Orleans & Pacific Ry. Co.*, 955 F.Supp. 739, 740 (E.D.Ky.1997) (when faced

with two federal statutes, court must reconcile them. "To the extent that they are

inconsistent, the FRSA will supersede the FELA based on the policy embodied in

the FRSA to ensure uniformity in law pertaining to railway safety."); *Dickerson v.

Staten Trucking, Inc.*, 428 F.Supp.2d 909, 913 (E.D.Ark. 2006) (Plaintiff's

crashworthiness claims under FELA precluded by FRSA); *Major v. CSX Transp.*,

278 F.Supp.2d 597, 610 (D.Md. 2003) (finding that FELA claims based on design

and operation of signal system were preempted by FRSA); *In re: Amtrak "Sunset

Limited" Train Crash in Bayou Canot, Alabama, on September 22, 1993*, 188

F.Supp.2d 1341, 1349 (S.D.Ala.2000) ( "Like common law negligence claims,

Appellate Case: 11-2003    Page: 52    Date Filed: 08/11/2011 Entry ID: 3817298

FELA negligence claims may not be used to impose duties beyond those imposed by Congress or the FRA-that is, FELA claims may, indeed, be subject to preemption.").

One district court from within the Eighth Circuit has cited *Waymire* and *Lane*, in recognizing that "courts have precluded FELA claims when the railroad's underlying conduct was in compliance with specific FRSA regulations." *Dickerson v. Staten Trucking, Inc.*, 428 F.Supp.2d 909, 913 (E.D.Ark. 2006). It found that one claim was precluded while another was not because the regulation "only touch[ed] upon the subject matter of safety training," rather than covering the subject matter. *Id*. at 914. This case was favorably cited by the Sixth Circuit in *Nickels*. 560 F.3d at 430.

Ballast is another issue covered by section 213 (Track Safety Standards) of the FRA regulations. 49 U.S.C. § 213.103. The case law finding that ballast claims brought under the FELA are precluded or are not precluded by the FRSA can appear to be conflicting if the facts of each case are not considered. However, the case law is clear that if the ballast at issue falls within the parameters of and is subject to 49 U.S.C. § 213.103 (*i.e.*, track-supporting ballast), an FELA claim which alleges negligence regarding the ballast is precluded by the FRSA if the railroad complied with section 213.103. *See e.g.*, *Nickels v. Grand Trunk Western Railroad, Inc.*, 560 F.3d 426 (6th Cir. 2009) *cert. den.* 130 S.Ct. 1136; *McCain v.*

Appellate Case: 11-2003    Page: 53    Date Filed: 08/11/2011 Entry ID: 3817298

*CSX*, 708 F.Supp.2d 494 (E.D.Pa. 2010) (FELA claims are "precluded by the FRSA if they would have been preempted if brought by a non-employee under state law," and "Plaintiff's claims based on the nature and size of the track ballast are precluded"); *Norris v. Central of Georgia Railroad Company*, 635 S.E.2d 179 (Ga.App. 2006) (FRA ballast regulations completely "cover the subject matter" of ballast, and "To the extent that Norris's FELA claim rests upon different ways by which COG might have supported the mainline track to comply with 49 C.F.R. § 213.103, the negligence claim is precluded."); *Kresel v. BNSF Railway Company*, 2011 WL 1456766 (D.Minn. April 15, 2011) (slip copy) ("[T]he ballast on which Kresel was standing when he slipped was track-supporting ballast that was subject to the requirements of § 213.103. Kresel's ballast-related claim is therefore preempted by § 213.103."); *Munns v. CSX Transp., Inc.*, 2009 WL 805133 (N.D.Ohio March 27, 2009) (unpublished) ("[b]ecause 49 C.F.R. § 213.103 covers the issue of ballast size ... [it] precludes the plaintiffs' FELA claims.").

If the ballast at issue is not track-supporting ballast, such as ballast on walkways, the FELA claim is not precluded by the FRSA. *See Davis v. Union Pacific R. Co.,* 598 F.Supp.2d 955 (E.D.Ark. 2009) ("the issue of walkways is not covered by the regulation concerning ballast"); *Grimes v. Norfolk Southern Ry. Co.*, 116 F.Supp.2d 995, 1000 (N.D.Ind. 2000) (plaintiff alleged "NSRC failed to provide a safe walkway for conductors when company policy requires them to get

out and make a visual inspection of the train."; This case was distinguished by *Nickels*, 560 F.3d 426). Another such case was cited in Appellant's Brief (p.41), *Elston v. Union Pacific Railroad Company*, 74 P.3d 478 (Colo.Ct.App. 2003), where the plaintiff alleged "defendant failed to provide its employees with a reasonably safe walkway alongside its railroad line," an area not covered by the FRA ballast regulation.

These ballast cases are not in conflict. Rather, these Circuit and district courts from across the country have consistently recognized the preclusive effect of the FRSA on FELA claims where the regulation at issue "covers the subject matter" of the alleged negligence and the railroad complies with that regulation.

Despite all of this case law, Plaintiff cites *Earwood v. Norfolk Southern Ry. Co.*, 845 F.Supp. 880 (N.D.Ga. 1993), for the proposition that an FELA claim cannot be precluded by the FRSA. However, this case has since been disagreed with by three Circuits in *Waymire v. Norfolk and Western Ry. Co.*, 218 F.3d 773 (7th Cir. 2000), *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439 (5th Cir. 2001), and *Nickels v. Grand Trunk Western R.R., Inc.*, 560 F.3d 426 (6th Cir. 2009), all of which were relied upon by the District Court here. (JA320; JA329).

Also, some of the cases cited by Plaintiff declined to hold that an FELA claim was precluded by the FRSA because the claim at issue was not "covered" by an FRA regulation. In addition to *Elston*, discussed above, in *Grimes v. Norfolk*

*Southern Ry. Co.*, 116 F.Supp.2d 995, 1002 (N.D.Ind. 2000), the regulation at issue "specifies a speed for inspecting crossings, but not for inspecting between crossings," which was the location at issue. (See Appellant's Brief, p.41). "Therefore, the subject matter is not identical." *Id*. at 1002. Also as to walkways, "[e]very circuit that has considered the issue of walkways has concluded that the FRSA is silent on the question of walkways. The regulations are directed toward creating a safe roadbed for trains, not a safe walkway for railroad employees who must inspect the trains. … [T]his Court declines to find anything in the regulations cited by the Defendant that *precludes this Plaintiff from asserting that the railroad was negligent for failing to provide a safe place to walk*." *Id*. at 1002-03. As such, the court was necessarily saying that FRA regulations *can* preclude an FELA plaintiff from alleging that a railroad was negligent where a regulation "covers the subject matter."

As discussed herein, *Easterwood* and *Lane* are not limited to their discrete facts, as Plaintiff would have it. (See Appellant's Brief, p.41-42). These cases have been widely cited by Circuit and district courts across the country when determining if an FELA claim is precluded by the FRSA. The *Grimes* and *Earwood* cases heavily relied upon in Appellant's Brief represent a very small minority of district courts which have held that the FRSA cannot preclude an FELA claim. This minority status was highlighted in 2009 by the Sixth Circuit in *Nickels*:

Appellate Case: 11-2003     Page: 56     Date Filed: 08/11/2011 Entry ID: 3817298

[T]he uniformity demanded by the FRSA "can be achieved only if [federal rail safety regulations] are applied similarly to a FELA plaintiff's negligence claim and a non-railroad-employee plaintiff's state law negligence claim." FN3 *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439, 443 (5th Cir. 2001); *see also Waymire v. Norfolk & W. Ry. Co.*, 218 F.3d 773, 776 (7th Cir. 2000).

FN3. Other courts also have reached this conclusion. *See, e.g., Dickerson v. Staten Trucking, Inc.*, 428 F.Supp.2d 909, 913-14 (E.D.Ark. 2006); *Major v. CSX Transp.*, Inc., 278 F.Supp.2d 597, 608-10 (D.Md. 2003); *In re Amtrak "Sunset Ltd." Train Crash*, 188 F.Supp.2d 1341, 1349 (S.D.Ala. 2000); *Rice v. Cincinnati, New Orleans & Pac. Ry. Co.*, 955 F.Supp. 739, 740-41 (E.D.Ky. 1997); *Thirkill v. J.B. Hunt Transp., Inc.*, 950 F.Supp. 1105, 1107 (N.D.Ala. 1996); *Norris v. C. of Ga. R.R. Co.*, 280 Ga.App. 792, 635 S.E.2d 179, 182-83 (2006); *CSX Transp., Inc. v. Miller*, 159 Md.App. 123, 858 A.2d 1025, 1047-49 (2004); *Elston v. Union Pac. R.R. Co.*, 74 P.3d 478, 486-88 (Colo.Ct.App. 2003); *Key v. Norfolk S. Ry. Co.*, 228 Ga.App. 305, 491 S.E.2d 511, 513-14 (1997). ***But see Grimes v. Norfolk S. Ry. Co.*, 116 F.Supp.2d 995, 1002-03 (N.D.Ind. 2000); *Earwood v. Norfolk S. Ry. Co.*, 845 F.Supp. 880, 889-91 (N.D.Ga. 1993).**

Dissimilar treatment of the claims would have the untenable result of making the railroad safety regulations established under the FRSA virtually meaningless: "The railroad could at one time be in compliance with federal railroad safety standards with respect to certain classes of plaintiffs yet be found negligent under the FELA with respect to other classes of plaintiffs for the very same conduct." *Id*. (quoting *Waymire v. Norfolk & W. Ry. Co.*, 65 F.Supp.2d 951, 955 (S.D.Ind. 1999), aff'd, 218 F.3d 773 (7th Cir.2000)).

We agree with this analysis. Although the courts in *Lane* and *Waymire* addressed FELA claims of unsafe train speed in light of FRSA speed-limit regulations, the FRSA's concern for uniformity leads us to reach the same conclusion regarding ballast regulations. And while railroads may face a lesser likelihood of state-law claims alleging negligent ballast composition, any exposure to conflicting standards undermines uniformity. *See Norris v. C. of Ga. R.R. Co.*, 280 Ga.App. 792, 635 S.E.2d 179, 183 (2006). The plaintiffs' claims are precluded by the

> FRSA if they would have been preempted if brought by a non-
> employee under state law.

*Nickels v. Grand Trunk Western R.R., Inc.*, 560 F.3d 426, 430 (6th Cir. 2009). In
the end, Plaintiff has not cited any persuasive authority for the Eighth Circuit to
follow the very small minority of district courts whose decisions have since been
rejected by the Seventh Circuit in *Waymire* (which encompasses the district court
which decided *Grimes*), the Sixth Circuit in *Nickels*, and the Fifth Circuit in *Lane*.

Plaintiff lastly relies *on Tufariello v. Long Island R. Co.,* 458 F.3d 80 (2nd Cir.
2006), for the proposition that "compliance with … an administrative regulation
dos not prevent a finding of negligence where a reasonable man would take
additional precautions." (Appellant's Brief, p.47-48). A reading of this case shows
that this language was taken from a parenthetical quote from the Restatement
Second of Torts, and followed the statement that "the fact that the LIRR's Hearing
Conservation Program complied with OSHA regulations regarding hearing
protection therefore does not conclusively demonstrate that the LIRR was free
from negligence. *Id*. at 91. The preclusive effect of OSHA regulations is not at
issue here. In any case, Plaintiff fails to recognize the specific alleged "negligence"
in *Tufariello*. The plaintiff alleged hearing loss from being exposed to locomotive
horns as the locomotives entered and exited the rail station where plaintiff worked
as a mechanic. *Id*. at 83. The plaintiff alleged the railroad was negligent in "failing
to provide proper *hearing protection* to [him] in light of his exposure to excessive

Appellate Case: 11-2003     Page: 58     Date Filed: 08/11/2011 Entry ID: 3817298

noise" and for not providing him with "reasonably safe conditions in which to work, and reasonably safe tools and equipment." *Id*. at 84. The district court "reasoned that the FRSA's goal of uniformity in the law relating to railway safety required that it also trump FELA insofar as the two federal statutes conflict. Because regulations promulgated pursuant to the FRSA provide for a minimum decibel level for train warning-devices, the court concluded, such a regulation 'cover[ed]' the subject matter' of warning devices, thereby precluding Tufariello's cause of action under FELA." *Id*. at 84-85. On appeal, the plaintiff waived the issue of whether the locomotives horns were too loud. *Id*. at 85. The only issue preserved for appeal was whether the railroad was negligent *in failing to provide hearing protection*. *Id*.

The Second Circuit acknowledged that "[c]ourts have concluded … that *the FRSA may, in certain circumstances, preclude a cause of action under FELA*. Several courts have decided, for example, that the FRSA precludes an action under FELA where a railroad employee claims that he or she was injured because of a negligently excessive train speed, and where the train was not exceeding the speed limit set by FRSA regulations. These courts have reasoned that permitting such FELA claims would be contrary to 'Congress' intent [in passing the FRSA] that railroad safety regulations be nationally uniform to the extent practicable.'" *Id*. at 86 (citing *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439, 443 (5th Cir. 2001); *Waymire*

*v. Norfolk & W. Ry. Co.*, 218 F.3d 773, 776 (7th Cir. 2000); *Rice v. Cincinnati, New Orleans & Pac. Ry. Co.*, 955 F.Supp. 739, 740-41 (E.D.Ky. 1997); *Thirkill v. J.B. Hunt Transp., Inc.*, 950 F.Supp. 1105, 1107 (N.D.Ala. 1996)). "The district court relied on this line of cases in concluding that 49 C.F.R. § 229.129, which establishes minimum sound levels for warning devices on trains, 'substantially subsume[s]' the subject matter of the decibel level of horns and thus precludes Tufariello's FELA action." *Id*. The Second Circuit did not dispute this holding by the district court, as it was not preserved for appeal. Rather,

> *[t]he FRSA regulations here, though, do not address the circumstances under which railroad employees must be provided hearing protection.* Thus, irrespective of whether, in order to establish uniform national standards as to minimum train horn volumes, the FRSA precludes a negligence action brought under FELA based on excessive volume of the locomotive horns—something we need not and do not decide—the *FRSA does not preclude a suit based on the alleged failure to equip an employee with hearing protection.* We think that the district court was therefore mistaken in concluding that the FRSA precludes Tufariello's cause of action based on the LIRR's failure to provide him with safety equipment, the only claim that remains before us on appeal.

*Id*. at 86.

As such, the *Tufariello* case actually supports BNSF's position here. Just as the District Court stated, "the Court did *not* … conclude that FRSA regulations provide a railroad's minimum duty of care for *every* FELA negligence claim. Plaintiff was only asserting that Defendant was negligent with respect to two related matters—operating the locomotive at an excessive speed and under poor

Appellate Case: 11-2003    Page: 60    Date Filed: 08/11/2011 Entry ID: 3817298

track conditions, and the Court narrowly concluded that because specific FRSA regulations govern railroad speed limits and track conditions, those regulations supplied the standard of care for Plaintiff's FELA negligence claim." (JA582). Here, unlike in *Tufariello*, specific FRA regulations directly cover the subject matters at issue. Because BNSF complied with those regulations, BNSF cannot be found to be negligent.

In the end, within approximately the last decade, four Circuits have held that the FRSA precludes FELA claims of negligence where an FRA regulation covers the subject matter at issue. *Nickels v. Grand Trunk Western Railroad, Inc.*, 560 F.3d 426, 432 (6th Cir. 2009), *cert den.* 130 S.Ct. 1136 (2009); *Tufariello v. Long Island R. Co.,* 458 F.3d 80 (2nd Cir. 2006); *Lane v. CSX Transp., Inc.*, 241 F.3d 439 (5th Cir. 2001); *Waymire v. Norfolk & W. Ry. Co.*, 218 F.3d 773 (7th Cir. 2000), *cert. den.* 531 U.S. 1112, 121 S.Ct. 856 (2001). Plaintiff has not cited a single Circuit which has disagreed. It would be contrary to all of these Circuits, which are all in agreement as to this fairly recent issue in FELA jurisprudence, for the Eighth Circuit to agree with Plaintiff here. The District Court properly cited these persuasive opinions in its Orders.

### 4. There was no basis for the District Court to agree with Plaintiff on the preclusion issue.

As discussed above, it would have been reversible error for the District Court to hold that the FRSA did *not* preclude Plaintiff's FELA claims where BNSF

Appellate Case: 11-2003    Page: 61    Date Filed: 08/11/2011 Entry ID: 3817298

complied with the FRA regulations governing those subject matters. The case law from the Circuits which have decided this issue is unanimous. The District Court did not abuse its discretion in denying Plaintiff's Rule 59(e) motion because its Order granting summary judgment was proper and supported by all available authorities from other Circuits.

### D. Plaintiff has not shown that BNSF violated any FRA regulation.

In his attempt to show that BNSF violated an FRA regulations, Plaintiff cites the "2 ¼ inch dip" which was detected in the track surface on January 14, 2008 after the alleged incident. Plaintiff asserts that this dip "exceeded the limits for class 3 track that applied because BNSF set a 40 mph limit for its train on this track," citing 49 C.F.R. § 213.63 and the limit that "the runoff in any 31 feet of rail at the end of a raise may not be more than … 2" [for Class 3 track]." (Appellant's Brief, p.53, p.57 n.20). Plaintiff fails to recognize that runoff and dip are not the same thing. Even Plaintiff's own expert admitted that this "dip" measurement complied with the FRA regulations, which required it to be 2 ¼". (JA87 at p.51:21-p.52:25). Blackwell admitted that "the dip is right on the line" for FRA compliance. (JA87 at p.52:20-25). Blackwell never discussed the "runoff" requirement, as it does not apply to the measurements at issue. (See JA73-95). As shown above, all of the measurements taken on January 14, 2008, after the alleged incident, were within the variation allowed by the FRA for Class 3 track.

Appellate Case: 11-2003    Page: 62    Date Filed: 08/11/2011 Entry ID: 3817298

| Measurement | FRA maximum allowable for Class 3 track |
|---|---|

| | Measurement | | FRA maximum allowable for Class 3 track |
|---|---|---|---|
| Dip | 2 ¼ | 2 ¼ | 49 C.F.R. § 213.63 (Track surface) |
| Alinement | 1 ½ | 1 ¾ | 49 C.F.R. § 213.55 (Alinement) |

Also, it is undisputed that the train was traveling under the 40 mile per hour speed limit permitted for Class 3 track. 49 C.F.R. § 213.9. As such, the District Court properly held that Plaintiff's FELA negligence claims on these issues were precluded by the FRSA.

## III. The District Court properly barred Alan Blackwell from providing certain expert opinions.

The Court barred Blackwell from testifying on three discrete issues, two of which are addressed in Appellant's Brief. Plaintiff has not disputed that Blackwell was properly barred from testifying that BNSF violated specific FRA regulations or that his opinions lacked a sufficient factual or analytical basis Rather, the portion of the court's order holding that "[e]xpert witnesses are not permitted to make legal conclusions, including whether certain conduct violated a given law or regulation" (JA319), has not been challenged in Appellant's Brief.

### A. The District Court did not err in barring Blackwell from opining on BNSF's alleged negligence in allowing Plaintiff's train to operate at an unsafe speed given the condition of this track.

The District Court held "that Blackwell will not be permitted to testify that Defendant was negligent in permitting the train in question to be operated within FRSA-mandated speed limits. The District Court noted, however, that this does not

Appellate Case: 11-2003     Page: 63     Date Filed: 08/11/2011 Entry ID: 3817298

prevent Plaintiff from seeking to establish that Defendant was negligent for failing to issue a temporary slow order due to a specific hazard, as is required by the FRSA in certain circumstances." (JA321) (citing *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 675 (1993) (noting that the petitioner railroad was "prepared to concede that the pre-emption of [an] excessive speed claim does not bar suit for breach of related tort law duties, such as the duty to slow or stop a train to avoid a specific, individual hazard"); *Murrell v. Union Pac. R.R. Co.*, 544 F. Supp. 2d 1138, 1151-52 (D. Or. 2008) (citing *Easterwood* in recognizing a state law negligence claim for failure to issue a slow order in response to a "specific, individual hazard.")).

In its September 7, 2010 Order denying Plaintiff's Rule 59 motion, the District Court further held that Blackwell

> does state in his expert report that Defendant violated numerous FRSA regulations … by, among other things, … failing to reduce the speed limit … but his opinions on these matters are *entirely conclusory* and are therefore insufficient to raise a genuine issue of material fact. *See Dulany v. Carnahan*, 132 F.3d 1234, 1242-43 (8th Cir. 1997) (in prisoner civil rights case, expert physician's "unsupported opinion is not sufficient to create a factual dispute that the prison officials failed to respond reasonably to [the plaintiff's] medical needs"). While Blackwell lists the documents that he reviewed prior to issuing his report, and sets forth the regulations and industry standards that are, in his view, applicable to Defendant's conduct, *at no point does he refer to specific facts underlying his conclusions.* … The same is true with respect to Blackwell's opinion about proper train speed: *he states that Defendant 'failed to maintain the proper temporary speed restriction,' but he fails to establish how he reached that conclusion or what a proper speed restriction would have been.* In short, Blackwell's expert report lacks actual application of his alleged expertise to the facts of the

case, and it is therefore inadequate to raise any factual disputes as to whether Defendant was negligent under the FELA.

(JA332-33). Plaintiff has not appealed this additional basis for barring Blackwell's opinions.

Plaintiff's only argument with regard to Blackwell's opinions on train speed is the District Court's "erroneous belief that the FRSA regulations mandate the speed limits for BNSF's trains." (Appellant's Brief, p.56). This issue has already been discussed at length above. Where a train is traveling within the speed limit proscribed by the FRA regulations, an expert cannot testify that the train was traveling at an unsafe speed. *Rice v. Cincinnati, New Orleans & Pacific Ry. Co.*, 955 F.Supp. 739, 741 (E.D.Ky. 1997) ("[I]t is undisputed that the train was traveling within the sixty mile per hour speed restrictions set by the Federal Railroad Safety Act. The plaintiff's expert therefore may not testify that the train was traveling at an unsafe speed."). Because all of the measurements at issue complied with the FRA requirements for Class 3 track, the Class 3 speed limit of 40 miles per hour was properly in place, and BNSF complied with it. *See* 49 C.F.R. §§ 213.9, 213.55, 213.63.

In an attempt to argue that the track was not in compliance with the FRA requirements for Class 3 track, Plaintiff cites to Blackwell's opinions that BNSF violated those regulations. (Appellant's Brief, p.57). However, as discussed above, the District Court barred those opinions as improper legal conclusions and for

Appellate Case: 11-2003     Page: 65     Date Filed: 08/11/2011 Entry ID: 3817298

being entirely conclusory, and Plaintiff has not appealed those issues. As such, those opinions cannot be considered here.

Under all of the authority cited above, including *Rice*, Blackwell was properly barred from giving opinions regarding "unsafe train speeds" under the facts of this case.

### B. Evidence of BNSF's subsequent remedial measures was properly ruled to be inadmissible.

The only argument Plaintiff made to the District Court in regard to subsequent remedial measures was that the evidence showed "feasibility of repairs," and exception to Federal Rule of Evidence 407. (JA321). The District Court ruled that "evidence of subsequent remedial measures is only permitted to prove the feasibility of precautionary repairs if the feasibility of such repairs is controverted. In this case, "Defendant does not dispute that the track repairs that ultimately took place would have been just as feasible before the incident as after**." (JA321-22).

Plaintiff's current argument is that the remedial actions taken by BNSF were "mandated by superior governmental authority," another exception to Rule 407. (Appellant's Brief, p.58). He claims these actions were "mandated" because the track was not in compliance with the applicable FRA regulations. (Appellant's Brief, p.58). First, as discussed above, Plaintiff has presented no evidence that the track conditions failed to comply with the FRA regulations for Class 3 track. Secondly, this is the first time Plaintiff has made this argument, and it has been

Appellate Case: 11-2003    Page: 66    Date Filed: 08/11/2011 Entry ID: 3817298

waived.

Plaintiff is also now claiming that evidence of subsequent remedial measures "is admissible also for proving the track defects were caused by persistent wet and muddy conditions, a purpose other than proving BNSF's negligence or culpable conduct." (Appellant's Brief, p.59). Again, this is the first time Plaintiff has made this argument, and it has been waived. In addition, the case law he cites is in regard to showing "*knowledge* of dangerous properties before accident," which is not what Plaintiff is claiming here.

The limited issue before the District Court was whether BNSF disputed the feasibility of repairs. (JA321-22). Plaintiff has not raised this issue on appeal. All of his arguments regarding subsequent remedial measures in his Appellate Brief were never before the District Court, and have been waived. In the end, no arguments regarding subsequent remedial measures are properly before this Court.

## CONCLUSION

The District Court's summary judgment order was proper and should be affirmed. The District Court's order barring the testimony of Alan Blackwell was also proper and should be affirmed.

Dated: August 11, 2011

Appellate Case: 11-2003    Page: 67    Date Filed: 08/11/2011 Entry ID: 3817298

Respectfully submitted,

/s/ Thomas E. Jones
Thomas E. Jones
Thompson Coburn, LLP
525 West Main Street
P.O. Box 750
Belleville, Illinois 62222-0750
Telephone: 618-277-4700
Telecopier: 618-236-3434
tjones@thompsoncoburn.com

Attorneys for Defendant-Appellee BNSF
Railway Company

Appellate Case: 11-2003    Page: 68    Date Filed: 08/11/2011 Entry ID: 3817298

## CERTIFICATE OF COMPLIANCE WITH RULE 32(a)
## AND EIGHTH CIRCUIT RULE 28A

This Brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because this brief contains 13,939 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

This Appellee's Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word 2007 word processing software in 14-point, Times New Roman font.

This brief and the addendum have been scanned for viruses and are virus-free.

/s/ Thomas E. Jones
Thomas E. Jones
Thompson Coburn, LLP
525 West Main Street
P.O. Box 750
Belleville, Illinois 62222-0750
Telephone: 618-277-4700
Telecopier: 618-236-3434
tjones@thompsoncoburn.com

Attorneys for Defendant-Appellee BNSF
Railway Company

Dated: August 11, 2011

Appellate Case: 11-2003    Page: 69    Date Filed: 08/11/2011 Entry ID: 3817298

## CERTIFICATE OF SERVICE

I certify that on August 11, 2011, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Thomas E. Jones
Thomas E. Jones
Thompson Coburn, LLP
525 West Main Street
P.O. Box 750
Belleville, Illinois 62222-0750
Telephone: 618-277-4700
Telecopier: 618-236-3434
tjones@thompsoncoburn.com

Attorneys for Defendant-Appellee BNSF Railway Company

Appellate Case: 11-2003    Page: 70    Date Filed: 08/11/2011 Entry ID: 3817298