# No. 11-2003

UNITED STATES COURT OF APPEALS
FOR THE EIGHTH CIRCUIT

KEVIN COWDEN,

*Plaintiff-Appellant,*

v.

BNSF RAILWAY COMPANY,

*Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Missouri,
No. 4:08CV01534
Hon. E. Richard Webber, presiding

**REPLY BRIEF
OF PLAINTIFF-APPELLANT**

SCHLICHTER, BOGARD & DENTON LLP
Jerome J. Schlichter
Roger C. Denton
Nelson G. Wolff
Michael A. Wolff
100 South Fourth Street, Suite 900
Saint Louis, Missouri 63102
(314) 621-6115

*Attorneys for Plaintiff-Appellant*

# TABLE OF CONTENTS

Table of Authorities ................................................................................. ii

Argument.............................................................................................1

I.   There is no basis for affirming the district court's summary
     judgment on the grounds of foreseeability. .........................................1

II.  There is no justification for the district court's preclusion of
     Cowden's FELA claim. ........................................................................8

     A.  BNSF waived its right to claim preclusion as an affirmative
         defense or basis for summary judgment....................................................8

     B.  There is no basis for concluding that FRSA regulations
         preclude Cowden's claim. ......................................................14

     C.  BNSF did not prove that it complied with all class 3 track
         regulations. ...............................................................24

III. The district court improperly barred Blackwell from providing
     opinions regarding BNSF's negligence and repair of the track. .......................27

Conclusion ........................................................................................29

Certificates of Compliance ...................................................................30

Certificate of Service ...........................................................................31

Appellate Case: 11-2003     Page: 2     Date Filed: 09/23/2011 Entry ID: 3832223

# TABLE OF AUTHORITIES

**Cases**

*Atchison, Topeka & Santa Fe Ry. Co. v. Buell*,
  480 U.S. 557 (1987)........................................................................15

*Bowman v. Norfolk S. Ry. Co.*,
  832 F.Supp. 1014 (D.S.C. 1993) .......................................................20

*Brooks v. Union Pac. R.R. Co.*,
  620 F.3d 896 (8th Cir. 2010) ..............................................................1

*Burlington N. R.R. Co. v. Farmers Union Oil Co. of Rolla*,
  207 F.3d 526 (8th Cir. 2000) ............................................................25

*Crown v. Union Pac. R.R. Co.*,
  162 F.3d 984 (8th Cir. 1998) ..............................................................3

*CSX Transp., Inc. v. Easterwood*,
  507 U.S. 658 (1993)................................................ 18, 21, 22

*CSX Transp., Inc. v. McBride*,
  564 U.S. ___, 131 S.Ct. 2630 (2011)................................ 2, 5, 6

*Denton v. Mr. Swiss of Mo., Inc.*,
  564 F.2d 236 (8th Cir. 1977) ............................................................11

*Duluth, Winnipeg & Pac. Ry. Co. v. City of Orr*,
  529 F.3d 794 (8th Cir. 2008) ............................................................19

*EEOC v. Wal-Mart Stores, Inc.*,
  477 F.3d 561 (8th Cir. 2007) ............................................................24

*Eldridge v. Mo. Pac. R.R.*,
  832 F.Supp. 328 (E.D.Okla. 1993) ...................................................20

*Fed. Ins. Co. v. Burlington N. Santa Fe Ry. Co.*,
  270 F.Supp.2d 1183 (C.D.Cal. 2003) ...............................................20

*Financial Timing Publications, Inc. v. Compugraphic Corp.*,
  893 F.2d 936 (8th Cir. 1990) ..............................................................9

*Francisco v. Burlington N. R.R. Co.*,
  204 F.3d 787 (8th Cir. 2000) ...........................................................1, 2

*Gallick v. B. & O. R.R. Co.*,
  372 U.S. 108 (1963)................................................ 2, 5, 6

ii

*Gilmore v. Union Pac. R.R. Co.*,
    2011 WL 3236060 (E.D.Cal. 2011) ................................................................23

*Harbin v. Burlington N. R.R. Co.*,
    921 F.2d 129 (7th Cir. 1990) ....................................................................2

*Heisler v. Metro. Council*,
    339 F.3d 622 (8th Cir. 2003) ................................................ 11, 12, 13

*Henning v. Union Pac. R.R. Co.*,
    530 F.3d 1206 (10th Cir. 2008) ..............................................................20

*Interco Inc. v. National Surety Corp.*,
    900 F.2d 1264 (8th Cir. 1990) ................................................... 11, 12

*Iowa, Chi. & E. R.R. Corp. v. Washington County, Iowa*,
    384 F.3d 557 (8th Cir. 2004) .................................................... 18, 21

*Jones v. Bock*,
    549 U.S. 199 (2007) ....................................................................8

*Lager v. Chi. N.W. Transp. Co.*,
    122 F.3d 523 (8th Cir. 1997) ....................................................................2

*Lane v. R.A. Sims, Jr., Inc.*,
    241 F.3d 439 (5th Cir. 2001) ..............................................................20

*Lewy v. S. Pac. Transp. Co.*,
    799 F.2d 1281 (9th Cir. 1986) ..............................................................25

*Major v. CSX Transp.*,
    278 F.Supp.2d 597 (D.Md. 2003) ..............................................................20

*Marshall v. Burlington N., Inc.*,
    720 F.2d 1149 (9th Cir. 1983) ..............................................................16

*Munns v. CSX Transp., Inc.*,
    2009 WL 805133 (N.D.Ohio 2009) ..............................................................20

*Norfolk S. Ry. v. Shanklin*,
    529 U.S. 344 (2000) ..............................................................18

*O'Bannon v. Union Pac. R.R. Co.*,
    960 F.Supp. 1411 (W.D.Mo. 1997) ..............................................................20

*PLIVA, Inc. v. Mensing*,
    564 U.S. ___, 131 S.Ct. 2567 (2011) ..............................................................14

*Ragsdell v. S. Pac. Transp. Co.*,
    688 F.2d 1281 (9th Cir. 1982) ..............................................................3

Appellate Case: 11-2003    Page: 4    Date Filed: 09/23/2011    Entry ID: 3832223

*Rice v. Cincinnati, New Orleans & Pac. Ry. Co.*,
   955 F.Supp. 739 (E.D.Ky. 1997) ........................................................20

*S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*,
   320 F.3d 838 (8th Cir. 2003) ..............................................................27

*Sayre v. Musicland Group, Inc.*,
   850 F.2d 350 (8th Cir. 1988) ................................................................8

*Sherman v. Winco Fireworks, Inc.*,
   532 F.3d 709 (8th Cir. 2008) ....................................................... 10, 14

*Sportsman v. BNSF Ry. Co.*,
   2011 WL 2134373 (E.D.Mo. 2011).......................................................4

*St. Louis S.W. Ry. Co. v. Pierce*,
   68 F.3d 276 (8th Cir. 1995) ................................................................20

*Stoebner v. Parry, Murray, Ward & Moxley*,
   91 F.3d 1091 (8th Cir. 1996)(per curiam) ...........................................10

*Tyrell v. Norfolk S. Ry. Co.*,
   248 F.3d 517 (6th Cir. 2001) ....................................................... 18, 19

*Universal Title Ins. Co. v. United States*,
   942 F.2d 1311 (8th Cir. 1991) ............................................................28

*Urie v. Thompson*,
   337 U.S. 163 (1949).............................................................................16

*Vidlak v. Burlington N. R.R.*,
   1993 WL 528041 (8th Cir. 1993)(unpublished) .................................3, 4

*Walker v. St. Louis-S.W. Ry. Co.*,
   835 S.W.2d 469 (Mo.App. 1992) .......................................................20

*Watson v. Rail Link, Inc.*,
   826 F.Supp. 487 (S.D.Ga. 1993) ........................................................20

*Waymire v. Norfolk & W. Ry. Co.*,
   218 F.3d 773 (7th Cir. 2000) ..............................................................20

*Weitz Co., LLC v. Lloyd's of London*,
   574 F.3d 885 (8th Cir. 2009) ..............................................................28

*Williams v. Burlington N. R.R. Co.*,
   849 F.Supp. 682 (E.D.Ark. 1994).......................................................20

*Wright v. Ill. Cent. R.R. Co.*,
   868 F.Supp. 183 (S.D.Miss. 1994) .....................................................20

iv

**Constitution**

U.S. Constitution, Article VI, Section 2 ...................................................................14

**Statutes**

45 U.S.C. §53 ...................................................................................................13

45 U.S.C. §54 ...................................................................................................13

45 U.S.C. §54a .......................................................................................... 13, 15

45 U.S.C. §55 ...................................................................................................25

49 U.S.C. §§20701 – 20703 (Locomotive Inspection Act) ....................................16

49 U.S.C. §20101 ..............................................................................................23

**Regulations**

49 C.F.R. §213.233 .................................................................................... 24, 25

49 C.F.R. §213.63 ............................................................................................24

Policy Statement, 43 Fed.Reg. 10583 (March 14, 1978).......................................17

**Rules**

Eastern District of Missouri Rule 7-4.01(E) ..........................................................6

Eighth Circuit Rule 32.1A ....................................................................................3

Federal Rule of Civil Procedure 8(c)(1) ................................................................8

Federal Rule of Evidence 407 .............................................................................28

Appellate Case: 11-2003    Page: 6    Date Filed: 09/23/2011 Entry ID: 3832223

# ARGUMENT

## I.   There is no basis for affirming the district court's summary judgment on the grounds of foreseeability.

BNSF contends that the district court properly granted it summary judgment because Cowden's injury was unforeseeable, and thus BNSF was not negligent, as a matter of law. The cases that BNSF principally relies on in support of that contention are off point.

BNSF principally relies on *Brooks v. Union Pacific Railroad Co.*, 620 F.3d 896 (8th Cir. 2010), and *Francisco v. Burlington Northern Railroad Co.*, 204 F.3d 787 (8th Cir. 2000). *Brooks* did not even address foreseeability. 620 F.3d at 900 n.5 ("we need not consider Brooks's arguments that Union Pacific acted with negligence and that his injury was foreseeable"). Instead, *Brooks* was decided on causation; the plaintiff failed to identify anything within BNSF's control that caused his injury and failed to designate his treating physician as an expert on causation. *Id.* at 899 ("Brooks, however, did not point to a specific incident that injured him"; "Brooks failed to serve Union Pacific with any expert disclosures"). That is not true of Cowden: he specifically identified the January 14, 2008 locomotive drop as the incident that caused his injury and designated medical experts who confirmed that cause of his injury. See Cowden Brief at 6. BNSF did not challenge causation on summary judgment; it challenged only whether the defective condition of its track on January 14, 2008 was foreseeable. JA115–21.

1

In *Francisco* the plaintiff was injured by an unprovoked assault from his supervisor. 204 F.3d at 788. The plaintiff, however, provided no evidence that the railroad knew of the supervisor's violent propensities, such that the railroad should have foreseen the type of harm the plaintiff suffered. *Id.* at 789–90.[1] In contrast, BNSF had ample warning of the propensity of its track to provide inadequate support to passing locomotives: this track had six incidents within the prior year of rough track surface, deficient crossties, washed out ballast, and persistent muddy conditions. Cowden Brief at 7–8, 21–22. This evidence, undisputed by BNSF, provided "reasonable ground to anticipate that a particular condition ... would or might result in a mishap and injury[.]" *CSX Transp., Inc. v. McBride*, 564 U.S. ___, 131 S.Ct. 2630, 2643 (2011)(quoting *Gallick v. B. & O. R.R. Co.*, 372 U.S. 108, 118 n.7 (1963)). From this evidence a jury could reasonably conclude that BNSF did "fail to observe that degree of care which people of ordinary prudence and sagacity would use under the same or similar circumstances[.]" *Id.* (quotation and editing marks omitted). It was more than "slight evidence", which is all that was required to submit the issue of BNSF's negligence to the jury. *Harbin v. Burlington N. R.R. Co.*, 921 F.2d 129, 131–32 (7th Cir. 1990); Cowden Brief at 19–20. BNSF does not deny that these are the standards for submissibility of

---

[1] *Lager v. Chicago Northwestern Transportation Co.*, similarly concerned insufficient evidence of the railroad's knowledge of an employee's violent propensities. 122 F.3d 523, 524–25 (8th Cir. 1997)(plaintiff identified only one prior incident of a verbal threat).

2

Cowden's claim.

BNSF's other cases also do not support its foreseeability argument. *Crown v. Union Pacific Railroad Co.* concerned a claim for emotional distress and plaintiff's failure to allege he was placed in immediate risk of physical danger. 162 F.3d 984, 985 (8th Cir. 1998). *Crown* is not remotely relevant to Cowden's claim for *physical* injuries. *Ragsdell v. Southern Pacific Transportation Co.* does not address foreseeability; instead it reversed a jury verdict for the railroad because the district court did not properly instruct on the railroad's continuous duty to provide a safe workplace. 688 F.2d 1281, 1283 (9th Cir. 1982). The quote BNSF attributes to *Ragsdell* appears nowhere in that decision. Cf. BNSF Brief at 18.

In violation of Eighth Circuit Rule 32.1A, BNSF cites an unpublished, per curiam, two-paragraph decision of this Court—*Vidlak v. Burlington Northern Railroad*, 1993 WL 528041 (8th Cir. 1993)(unpublished). *Vidlak* has no "persuasive value on a material issue", 8th Cir. R. 32.1A, because the plaintiff—complaining of an injury from lifting a box—failed to offer *any* evidence of foreseeability and admitted he had no problem carrying the box, had lifted heavier items without problem, did not trip or slip on anything, did not claim to have been assigned to an unsafe area or provided unsafe equipment, and did not claim to have been assigned work beyond his physical capacity. *Vidlak*, 1993 WL 528041 at *1. Therefore, there was "no basis on which a reasonable jury could conclude BN was

3

negligent in failing to foresee that Vidlak could be injured[.]" *Id.* Cowden, in contrast, *did* provide evidence of foreseeability, pointing to six prior incidents of track defects in the preceding year, lack of adequate repairs, and persistent muddy conditions. See Cowden Brief at 21–22. Given the undisputed knowledge that such conditions lead to deficient track, it was reasonably foreseeable that if BNSF did not make more than temporary repairs to this area of track, the track could fail to support a passing locomotive and cause injury to its occupants—precisely the injury this track caused to Cowden.

The magistrate judge in *Sportsman v. BNSF Railway Co.* granted summary judgment against a plaintiff injured in a car collision while being transported to work only because the plaintiff failed to adduce any evidence that his seatbelt was defective or that the railroad should have known the seatbelt was defective. 2011 WL 2134373 at *6 (E.D.Mo. 2011). Here, Cowden pointed to six prior incidents of track defects and persistent muddy conditions, which BNSF did not permanently address until after Cowden's injury. It is much more foreseeable that persistent defective track conditions could lead to a locomotive injury than that a vehicle with no known seatbelt problems could have a seatbelt defect.

BNSF cites no case with facts remotely similar to Cowden's in which a Circuit Court (much less this Court) affirmed summary judgment for the railroad. Moreover, BNSF cites no authority in support of its more radical proposition that it

4

cannot be held negligent unless the condition that injured Cowden had previously injured another employee. BNSF Brief at 19–20 ("As discussed above, no previous 'mishap or injury' occurred."). In this use of the phrase "mishap or injury", BNSF misquotes *McBride*. The Supreme Court does not require prior mishaps and injuries in order to prove foreseeability and negligence; instead it requires only a "reasonable ground to anticipate that a *particular condition* ... would or might result in a mishap and injury[.]" *McBride*, 131 S.Ct. at 2643 (emphasis added).[2] *McBride* quoted *Gallick*, in which the plaintiff suffered an FELA-compensable injury from a bug bite. *Gallick* did not require evidence of prior bug bites to establish the railroad's negligence, it required only knowledge of a condition (a stagnant pool of water) that could lead to that specific injury. See *Gallick*, 372 U.S. at 117–19. Indeed, the *Gallick* jury specially found that the railroad could not foresee that stagnant pool would start a chain of events that culminated in the plaintiff's injury and that the railroad had no reason to anticipate that the stagnant pool might result in a mishap and injury. *Id.* at 119.[3] A disabling injury to an employee as the result of a bug bite from a stagnant pool of water is much less foreseeable than an injury to an employee from a locomotive dropping over a track that in the preceding year had suffered six incidents of washouts, defective ties,

---

[2] BNSF ignores *McBride* except to point out that it did not "involve[] alleged rough track or excessive train speeds", BNSF Brief at 26–27, an insignificant distinction.

[3] BNSF does not even discuss *Gallick*.

5

rough track surface, and persistent muddy conditions.

*Gallick*'s conclusion that the facts in that case provided a reasonable basis for a jury finding of negligence, and *McBride*'s recent endorsement of that conclusion, demonstrates that Cowden's evidence also provided a reasonable basis for a jury finding of negligence against BNSF. *Gallick* held that the lack of prior bug bite incidents only created an issue of fact to submit to the jury. *Id.* at 121–22. The lack of prior train drops or injuries in the area where Cowden was injured likewise only creates an issue of fact to submit to the jury. It does not provide a basis for granting BNSF summary judgment.

While BNSF quotes the district court's reliance on a "geometry car reading[]" in its effort to prove that no reasonable person could find Cowden's injury foreseeable, BNSF ignores the fact that it did not submit evidence of that reading in compliance with Eastern District of Missouri Rule 7-4.01(E). See Cowden Brief at 24. The geometry car reading was not in evidence and provides no basis for affirming the summary judgment. Furthermore, BNSF does not dispute Cowden's contradiction of the significance of the putative geometry car reading—that BNSF limited its trains to class 3 speeds even though the putative reading allowed class 4 speeds. *Id.*

BNSF provides no basis for affirming the district court's conclusion that no reasonable jury could find that BNSF should have known of the defective

6

condition of the track that caused Cowden's injury, particularly under the relaxed standards of the FELA. BNSF is left, then, with arguing that it was entitled to summary judgment because "FRA regulations ... cover the subject matter and preclude FELA liability[.]" BNSF Brief at 20. As shown next, that argument also fails.

Appellate Case: 11-2003    Page: 13    Date Filed: 09/23/2011 Entry ID: 3832223

## II.    There is no justification for the district court's preclusion of Cowden's FELA claim.

BNSF's arguments in favor of FRSA preclusion to eliminate FELA compensation for this seriously injured railroad employee fail for three reasons. First, BNSF has not shown any basis in law for avoiding the consequence of its waiver of that affirmative defense by having failed to plead the affirmative defense in its answer or even raise it in its motion for summary judgment. Second, BNSF has not shown any basis in law for this Court to conclude that the FRSA regulations preclude BNSF's liability to Cowden under FELA common law standards. Finally, even on appeal BNSF has not demonstrated its compliance with all FRSA regulations required as conditions to travel at class 3 speeds.

### A.    BNSF waived its right to claim preclusion as an affirmative defense or basis for summary judgment.

BNSF contends, without citation of any authority, that it is required to plead *only* the affirmative defenses enumerated in Federal Rule of Civil Procedure 8(c)(1). BNSF Brief at 25. BNSF is wrong. That list of affirmative defenses is not exhaustive. *Jones v. Bock*, 549 U.S. 199, 212 (2007); *Sayre v. Musicland Group, Inc.*, 850 F.2d 350, 353 (8th Cir. 1988). A defendant must "affirmatively state *any* avoidance or affirmative defense", whether listed or not. Fed.R.Civ.P. 8(c) (emphasis added).

BNSF attempts to avoid the consequence of its waiver of the preclusion

8

affirmative defense by arguing for the "no unfair surprise" exception. BNSF Brief at 25. Its cases, however, do not support BNSF. In *Financial Timing Publications, Inc. v. Compugraphic Corp.* the defendant pleaded that the complaint was barred by the statute of limitations, but did not plead bar by the contractual limitation period; it did, however, assert the contractual bar in interrogatory answers and in its memorandum in support of summary judgment. 893 F.2d 936, 944 n.9 (8th Cir. 1990). Here, BNSF did not assert preclusion in any manner in its answer. JA13–JA14, JA16–JA17. BNSF identifies no interrogatory answer in which it even suggested preclusion as an affirmative defense. BNSF did not assert preclusion in its summary judgment memorandum. JA111–21.[4] BNSF did not raise this affirmative defense in any manner remotely similar to the defendant in *Financial Timing* and thus cannot claim, as could the *Financial Timing* defendant, that Cowden did not suffer "unfair surprise". 893 F.2d at 944 n.9. Cowden had no inkling that preclusion would be basis for granting BNSF summary judgment until the Court's summary judgment order. It is difficult to imagine more "unfair

---

[4] BNSF argued only that Cowden "failed to prove any breach of duty" (JA116), "failed to prove causation of injury" (JA119), and "failed to establish the essential element of foreseeability" (JA120). BNSF now suggests that it included its preclusion argument in its "breach of duty" argument. BNSF Brief at 22. The only duty argument BNSF made, however, was that it did not have actual or constructive knowledge of the track condition. JA116–19. The only facts BNSF pointed to were *Cowden*'s lack of knowledge of any prior problems with the track. *Id.* BNSF did not argue that its duty was defined by the FRSA regulations, much less identify the specific regulations it contended governed its conduct or submit evidence proving its compliance with those regulations.

9

surprise" than that.

The unfair surprise and prejudice to Cowden in this case contrasts starkly with BNSF's other citation—*Stoebner v. Parry, Murray, Ward & Moxley*, 91 F.3d 1091 (8th Cir. 1996)(per curiam). In *Stoebner* the plaintiff bankruptcy trustee did not claim prejudice, "failed to show that he lacked notice of the defense", and failed to show that defendant's raising of the defense for the first time on summary judgment "prejudiced his ability to respond." *Stoebner*, 91 F.3d at 1093–94. Here, Cowden both claimed and showed prejudice. BNSF did not raise the defense in its summary judgment motion and Cowden had no notice of the defense until the court's summary judgment.

In *Sherman v. Winco Fireworks, Inc.*, this Court held it was an abuse of discretion to allow the defendant to belatedly amend its answer to insert a preemption affirmative defense. 532 F.3d 709, 715 (8th Cir. 2008). The Court held that absent a change in law, newly discovered facts, or other changed circumstances, "a diligent defendant will be able to plead the defense [preemption] on the basis of the complaint alone, at the onset of the litigation." *Id.* at 718. Similarly, BNSF could have pleaded its preemption affirmative defense in the answer it filed on November 4, 2008. JA12. Indeed, the fact that BNSF *never* asserted preclusion as an affirmative defense, *even in its summary judgment motion*, demonstrates that BNSF likely was as surprised as Cowden at the district

10

court's preclusion ruling.

BNSF claims the district court properly granted summary judgment on preclusion despite BNSF's failure to allege or argue that issue because "the district court's findings on properly addressed issues foreclose the unraised issue." BNSF Brief at 24 (quoting *Heisler v. Metro. Council*, 339 F.3d 622, 632 (8th Cir. 2003)). *Heisler*, however, rejected the district court's *sua sponte* grant of summary judgment to the defendant. *Heisler*, 339 F.3d at 632. BNSF's other cited case, *Denton v. Mr. Swiss of Missouri, Inc.*, similarly reversed the district court's *sua sponte* summary judgment. 564 F.2d 236, 242 (8th Cir. 1977)("Although the trial court may assist, through pretrial proceedings, in sharpening the issues, it may not grant summary judgment without a motion therefor."). The district court here did more than "assist, through pretrial proceedings, in sharpening the issues," it granted summary judgment, precisely what *Denton* prohibits. BNSF cites no case that affirmed a *sua sponte* summary judgment under facts similar to Cowden's.

The basis for affirming *sua sponte* summary judgments acknowledged in *Heisler* (the "premise" of the defendant's argument that *Heisler* rejected) comes from *Interco Inc. v. National Surety Corp.*, 900 F.2d 1264 (8th Cir. 1990); see *Heisler*, 339 F.3d at 632. *Interco* was a declaratory judgment action among insurance companies over excess insurance coverage. *Interco*, 900 F.2d at 1269. *Interco* affirmed the district court's *sua sponte* summary judgment only because

11

the plaintiff conceded "that no genuine issue of material fact existed and that the only issue was the interpretation of policy language, a question of law for the court." *Id.* Cowden, in contrast, does not concede there was no genuine issue of material fact in his case (he asserts the contrary) and Cowden's case does not concern a strictly legal question like the interpretation of insurance contracts. Finally, the declaratory judgment action in *Interco* was to be bench tried, so the consequence of a *sua sponte* summary judgment was limited. Cowden's case, in contrast, is to be tried by a jury, a right that is especially protected under the FELA. The consequence of a *sua sponte* summary judgment in Cowden's case thus was extreme, depriving him of a fundamental right, wholly unlike *Interco*.

The only issue before the district court was whether *Cowden*'s lack of knowledge of the defective condition of the track rendered the track defect unforeseeable to BNSF as a matter of law. See JA111–21. That has nothing to do with the unraised issue of whether FRSA regulations set BNSF's standards of care or precluded Cowden's FELA claim. Therefore, "the district court's findings on properly addressed issues" do not "foreclose the unraised issue" in this case. *Heisler*, 339 F.3d at 632.

BNSF claims Cowden should have known the district court was going to apply FRSA preclusion as a basis for granting BNSF summary judgment because Cowden himself cited certain FRSA regulations in his opposition and hired an

Appellate Case: 11-2003    Page: 18    Date Filed: 09/23/2011 Entry ID: 3832223

expert to opine on whether BNSF violated any regulations. Violation of an FRA regulation (including the FRSA regulations) is negligence *per se* under the FELA. 45 U.S.C. §§53–54a; Cowden Brief at 32. That does not mean, however, that *compliance* with an FRA regulation is a defense *per se* to FELA liability. Cowden's efforts to gain the benefit of *per se* negligence did not indicate that he should have known of BNSF's unpleaded and unargued preclusion affirmative defense.

BNSF finally contends that it put Cowden on due notice of its preclusion summary judgment argument by arguing in a *different* motion that the FRSA "preempted" Cowden's expert only from providing an opinion as to the speed of BNSF's train. BNSF Brief at 25; JA36. If BNSF actually intended this to be a basis for granting summary judgment, it would have mentioned that in its summary judgment motion, or at the very least in its reply filed 27 days later. JA274–84. It did not, showing that BNSF did not expect to obtain summary judgment on grounds of preclusion.

BNSF cites no case approving the grant of summary judgment on grounds never raised in the summary judgment pleadings. Obviously, then, Cowden was "unfairly surprised" by the district court's *sua sponte* decision to grant summary judgment on those grounds, which was improper and reversible error. *Heisler*, 339

13

F.3d at 631; *Sherman*, 532 F.3d at 715.[5]

### B. There is no basis for concluding that FRSA regulations preclude Cowden's claim.

BNSF does not dispute the legislative history of the FRSA that demonstrates Congress did not intend for the FRSA or subsequently issued regulations to affect the FELA common law standard of liability. See Cowden Brief at 34–37. Nor does BNSF identify any intolerable conflict between the FRSA and the FELA in this case. See *id.* at 30–34, 38. Instead, BNSF suggests that the preclusion analysis is the same as the preemption analysis for applying the FRSA to State laws and regulations, referring to a unitary "preclusion/preemption" throughout its brief. That blending of preemption and preclusion is improper.

Preemption and preclusion are different doctrines with different standards. Preemption is a constitutional issue, deriving from the the Supremacy Clause of the U.S. Constitution (Article VI, Section 2). See, e.g., *PLIVA, Inc. v. Mensing*, 564 U.S. ___, 131 S.Ct. 2567, 2577 (2011). Preemption applies regardless of Congressional intent (unless Congress restricts the preemptive effect of its act, as it

---

[5] Further demonstrating unfair surprise to Cowden, the district court cited regulations that BNSF did not cite in *any* of its briefs. Compare JA330 (citing 49 C.F.R. §§213.233, 213.9(b), 213.237(e)(2)) with JA111–21 (memorandum in support of summary judgment, citing no regulations), JA274–85 (reply in support of summary judgment, citing no regulations), JA32 (memorandum in support of striking Blackwell, citing 49 C.F.R. §§213.55, 213.63), and JA265–66 (reply in support of striking Blackwell, citing same). BNSF does not indicate how Cowden should have anticipated that.

Appellate Case: 11-1003     Page: 20     Date Filed: 09/23/2011  Entry ID: 3832223

did in the FRSA).

Preclusion, however, is not a constitutional issue; it concerns the resolution of a conflict between Federal statutes. Preclusion requires a determination of Congressional intent as to which statute supersedes, if the statutes cannot be construed to be complementary. In this case, given the long-standing protective principles of the FELA, that conflict must be an "intolerable conflict[.]" *Atchison, Topeka & Santa Fe Ry. Co. v. Buell*, 480 U.S. 557, 566–67 (1987).[6] BNSF has not shown any such intolerable conflict in Cowden's case; BNSF has not shown that it was impossible to comply with FRSA regulations while at the same time keeping its track in a condition that it did not injure Cowden when his locomotive travelled over it. Even if BNSF had shown any conflict, it has not provided any evidence that Congress intended that FRSA regulations supersede FELA common law standards of care. Cowden, however, has shown the contrary—that Congress intended the FRSA only to supplement common law liability under the FELA by providing additional bases for negligence *per se* liability, not to replace the FELA's common law standards of care. See Cowden Brief at 35–38; 45 U.S.C. §54a.

Because of the difference between the preemption and preclusion analysis,

---

[6] Contrary to BNSF's assertion, it is irrelevant that *Buell* concerned the Railway Labor Act and not the FRSA. BNSF identifies no difference between the Acts that would justify applying a different standard to determine the preclusive effect of either act upon an FELA claim.

15

BNSF's full-page block quote of the FRSA's preemption provision is irrelevant, except to show that Congress did not even intend for the FRSA to entirely preempt State law (and thus could not have intended the FRSA to entirely preclude FELA common law liability). On its face this statute applies only to State and not Federal law and BNSF has shown no basis for inferring Congressional intent to apply the statute to the FELA.

The Supreme Court has construed other Federal railroad safety statutes to supplement rather than supplant the FELA. Cowden Brief at 32–33. BNSF attempts to distinguish the FRSA from one of those statutes—the Locomotive Inspection Act (LIA)—by selectively quoting from *Marshall v. Burlington Northern, Inc.*, 720 F.2d 1149 (9th Cir. 1983). BNSF Brief at 28–29. BNSF, however, omits the sentence that follows that quote: "The Railroad Safety Act [FRSA] does not occupy the field." *Marshall*, 720 F.2d at 1153 (discussing preemption of State common law negligence action for crossing collision). BNSF is correct that there is a difference in the preemptive scope of the LIA and FRSA, but for a different reason. The LIA is *more* preemptive. Thus, the Supreme Court's conclusions that the more preemptive LIA is "supplemental to" the FELA, "facilitating employee recovery, not ... restricting such recovery or making it impossible", *Urie v. Thompson*, 337 U.S. 163, 189 (1949), applies with even greater force to the *less* preemptive FRSA. See Cowden Brief at 33.

16

BNSF block quotes from a policy statement issued by the FRA in 1978 to suggest the FRA agrees with BNSF's argument that FRA regulations supersede FELA common law standards of care. BNSF Brief at 34 (quoting Policy Statement, 43 Fed.Reg. 10583, 10585, 10586 (March 14, 1978)). That block quotation is misleading.[7] First, the policy statement is not a regulation, but instead a supplement to the FRA's notice of withdrawal of its "notice of proposed rulemaking with respect to railroad occupational safety and health standards." 43 Fed.Reg. at 10584 (first column). Second, the supplement does not address the FELA, much less assert the supremacy of FRA regulations over FELA common law standards of care; instead it addresses only the competing jurisdictions between the FRA and the OSHA. 43 Fed.Reg. at 10584 (first column)("This termination notice also explains the respective jurisdiction of FRA and Labor"); see also 43 Fed.Reg. at 10585, 10589–90. Thus, the "any other agency of the government" included in the emphasized portion of BNSF's quote refers specifically to regulatory agencies and not, as BNSF implies, to the courts and juries that apply FELA common law standards. BNSF's block quote thus has nothing to do with regulatory preclusion of FELA common law standards of care.

BNSF misleadingly and incorrectly suggests that this Court recognized the

---

[7] BNSF also misleadingly rearranges the quoted paragraphs. BNSF's second quoted paragraph precedes the first quoted paragraph in the Policy Statement and the three quoted paragraphs are in three different sections of the Statement. See 43 Fed.Reg. at 10585 (first and third columns), 10586 (first column).

17

preclusive effect of the FRSA upon the FELA in *Iowa, Chicago & Eastern Railroad Corp. v. Washington County, Iowa*, 384 F.3d 557 (8th Cir. 2004). *Iowa* did not concern an FELA claim, but instead was a declaratory judgment action brought by a railroad company to have an Iowa statute regarding railroad bridges over highways declared preempted by the Interstate Commerce Commission Termination Act of 1995 (ICCTA). *Id.* at 558. The question in *Iowa* was whether the ICCTA or the FRSA governs the preemption question. *Id.* at 558–61 (the FRSA governs). *Iowa* does not even address preclusion. Moreover, *Iowa* makes clear the FRSA preemption itself is limited. "[T]he FRSA preempts state tort law regulation of railroad grade crossing safety *only* when federal funds participate in the installation of warning devices and the devices are subject to the approval of the Federal Highway Administration[.]" *Id.* at 559–60 (citing *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 665–71 (1993), and *Norfolk S. Ry. v. Shanklin*, 529 U.S. 344, 352–57 (2000)); see also Cowden Brief at 39–40. If *preemption* is limited to instances of federally funded and approved devices, then *preclusion* must be at least as limited (even if the FRSA could be construed to have any preclusive effect). BNSF does not claim that any Federal agency funded or approved the condition of its track. Thus, under *Iowa*, the FRSA could not preclude application of FELA common law standards of care to Cowden's claim.

BNSF also misleadingly suggests that *Tyrell v. Norfolk Southern Railway Co.*,

18

248 F.3d 517 (6th Cir. 2001), concerned FRSA preclusion of an FELA common law claim similar to Cowden's. Instead, *Tyrell* concerned an FELA action asserting the railroad's negligence *per se* for violating a *State* regulation. *Id.* at 520. The railroad company moved for summary judgment on the grounds that the State regulation was preempted by the ICCTA. *Id.* As in *Iowa*, the question was whether the ICCTA or the FRSA governed the preemption issue, with the plaintiff arguing (along with the United States and the Surface Transportation Board as *amici curiae*) that the FRSA governed and did not preempt the State regulation. *Id.* at 521. The Sixth Circuit agreed with the plaintiff. *Id.* at 525. As the court noted, the FRSA incorporates "a presumption against federal preemption[.]" *Id.* at 524. Again, this contradicts BNSF's argument that presumes preemption so long as any FRSA regulation addresses a condition involved in a railroad employee's injury. The presumption against *preemption* recognized in *Tyrell* is an even stronger presumption against *preclusion*, since Congress does not mention preclusion or the FELA and particularly given the long-standing protective principles underlying FELA common law liability, most recently recognized by the Supreme Court in *McBride*.

BNSF's unwarranted blurring of the distinction between preemption of State law and preclusion of Federal law leads it to cite numerous cases that are inapposite because they concern only the preemption of State law. *Duluth,*

19

*Winnipeg & Pac. Ry. Co. v. City of Orr*, 529 F.3d 794 (8th Cir. 2008); *Henning v. Union Pac. R.R. Co.*, 530 F.3d 1206 (10th Cir. 2008); *Fed. Ins. Co. v. Burlington N. Santa Fe Ry. Co.*, 270 F.Supp.2d 1183 (C.D.Cal. 2003); *Walker v. St. Louis-S.W. Ry. Co.*, 835 S.W.2d 469 (Mo.App. 1992); *St. Louis S.W. Ry. Co. v. Pierce*, 68 F.3d 276 (8th Cir. 1995); *O'Bannon v. Union Pac. R.R. Co.*, 960 F.Supp. 1411 (W.D.Mo. 1997); *Wright v. Ill. Cent. R.R. Co.*, 868 F.Supp. 183 (S.D.Miss. 1994); *Williams v. Burlington N. R.R. Co.*, 849 F.Supp. 682 (E.D.Ark. 1994); *Bowman v. Norfolk S. Ry. Co.*, 832 F.Supp. 1014 (D.S.C. 1993); *Watson v. Rail Link, Inc.*, 826 F.Supp. 487 (S.D.Ga. 1993); *Eldridge v. Mo. Pac. R.R.*, 832 F.Supp. 328 (E.D.Okla. 1993).

One of BNSF's cases, *Rice v. Cincinnati, New Orleans & Pac. Ry. Co.*, 955 F.Supp. 739 (E.D.Ky. 1997), applies railroad crossing preemption to an FELA action in the same manner as *Waymire v. Norfolk & W. Ry. Co.*, 218 F.3d 773 (7th Cir. 2000), and *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439 (5th Cir. 2001), and is distinct for the same reasons as for those cases. See Cowden Brief at 41–45. Another of BNSF's cases, *Major v. CSX Transp.*, 278 F.Supp.2d 597 (D.Md. 2003), found preemption only because the FRA actually inspected and approved the railroad's signal system. *Id.* at 610. BNSF does not claim any Federal agency inspected and approved its track in this case. BNSF also cites *Munns v. CSX Transportation, Inc.*, but that court was bound by *Nickels* regarding the plaintiff's

20

claim of unsafe ballast. 2009 WL 805133 at *3 (N.D.Ohio 2009). *Nickels* was incorrectly decided and is inapposite for the reasons stated in Cowden Brief at 45–47.

Contrary to BNSF's repeated assertion, its cases do not stand for the proposition that the FRSA has set "speed limits" for railroad tracks and thus the FRSA preempts or precludes any claim that suggests a train should have been travelling slower than the FRSA-prescribed speed because of a particular hazardous condition. First, BNSF completely ignores the FRA's express statement that it does not set speed limits, but rather sets the minimum track standards for the speed at which the railroad chooses to run. See Cowden's Brief at 56. Second, the Supreme Court's preemption analysis in *Easterwood* is not based on FRSA "speed limits" for all tracks, but instead a deeper analysis of the regulation of railroad crossing safety, the highly regulated warning signal regulations and approval process involving both the FRA and the Federal Highway Administration, and the FRA's determination that railroad crossing safety is better achieved through warning systems than speed reductions. See Cowden Brief at 40 and n.12;[8] *Easterwood* at 665–71, 673–75; see also *Iowa*, 384 F.3d at 559–60. Third, Cowden's claim is that BNSF failed to maintain its track in a condition safe for

---

[8] The preemption issue in *Easterwood* was not merely the speed regulations, but instead "petitioner's contention that the Secretary's speed *and grade crossing* regulations 'cove[r] the subject matter' of, and therefore pre-empt, the state law on which respondent relies." *Easterwood*, 507 U.S. at 663.

21

travel at the speeds BNSF ran its locomotive, not that the FRA's speed limit is too high.

BNSF's crossing collision cases are "speed limit" cases only to the extent that the plaintiffs contended that the crossing itself required a slower speed than the FRA allowed, a position that directly contradicts the FRA's policy decision that crossing safety is better secured through Federally approved warning devices than requiring trains to slow down at each crossing. That broad policy determination is not at issue in Cowden's case, which is a case of BNSF's failure to maintain its track in a safe condition.

Even the railroad in *Easterwood* recognized that the FRSA speed regulations would not preempt a common law duty "to slow or stop a train to avoid a specific, individual hazard." *Easterwood*, 507 U.S. at 675 n.15.[9] The specific, individual hazard in this case was an area of track that had six defects and persistent muddy conditions in the year preceding Cowden's injury. Until BNSF fixed that condition, it had a common law duty under the FELA to slow train traffic to safe levels in light of that "specific, individual hazard", *id.*, a duty that is not preempted by the FRSA regulations.

BNSF claims the courts that have rejected preclusion are "a very small

---

[9] This statement has even greater weight in this case, given the long-standing protective principles of the FELA, which were not at issue in the State common law claim of the truck driver's survivors in *Easterwood*.

Appellate Case: 11-2003    Page: 28    Date Filed: 09/23/2011  Entry ID: 3832223

minority[.]" BNSF Brief at 47. That is incorrect, as shown by the cases cited in Cowden's Brief at 47–49 and the cases cited by those courts. See also *Gilmore v. Union Pac. R.R. Co.*, 2011 WL 3236060 at *4–6 (E.D.Cal. 2011)(analyzing cases). But more importantly, the Court should not determine preclusion merely by how many decisions have been made on one side or the other. Instead, the Court should make that decision based on the reasoning of Cowden's briefs and cases. BNSF has provided no good reasoning to the contrary, either in its brief or in the so-called "wealth of district court cases" it cites. BNSF provides no basis for believing that Congress implicitly intended for the FRSA to overturn a century of precedent supporting the FELA's generous and protective common law standards of care, particularly in a statute Congress enacted expressly "to promote safety in every area of railroad operations[.]" 49 U.S.C. §20101.

BNSF attacks a straw man by claiming that Cowden argues "compliance with FRA regulations can *never* preclude an FELA claim[.]" BNSF Brief at 40 (emphasis added). Cowden never argues that; instead, he argues only that "the FRSA and its regulations do not preclude *Cowden*'s claim." Cowden Brief at 30 (emphasis added); see also *id.* at 16. Whether an FRA regulation can ever preclude an FELA claim is a question this Court need not decide. BNSF has provided no basis for concluding that the FRSA regulations at issue here preclude Cowden's FELA claim.

Appellate Case: 11-2003     Page: 29     Date Filed: 09/23/2011 Entry ID: 3832223

### C.  BNSF did not prove that it complied with all class 3 track regulations.

Even if the FRSA regulations could preclude Cowden's FELA claim, preclusion was BNSF's affirmative defense. See *supra* at 8. It thus was BNSF's burden to prove that it complied with all applicable FRSA regulations in order to defeat Cowden's claim, particularly on summary judgment. See *EEOC v. Wal-Mart Stores, Inc.*, 477 F.3d 561, 571–72 (8th Cir. 2007). BNSF did not do that in its summary judgment filings in the district court and does not do that in its brief on appeal. Instead, BNSF inverts the summary judgment standard for affirmative defenses and contends that it was *Cowden*'s burden to show that BNSF violated an FRSA regulation. BNSF Brief at 53–54.

Cowden identified many FRSA regulations that BNSF violated, based upon the current record, including the minimum regulations BNSF had to comply with to run its trains at class 3 speeds. Cowden Brief at 50–54. BNSF addresses only one of the class 3 regulations—49 C.F.R. §213.63. BNSF Brief at 53–54. Even then, BNSF cites only the testimony of Cowden's expert (Blackwell), which was equivocal about whether BNSF complied with the regulation. See JA87 (53:1–23)(Blackwell noting he does not have the regulations in front of him and being asked to assume what BNSF's attorney contends are the regulatory

24

requirements).[10] BNSF also did not submit evidence that it conducted weekly inspections of this track in compliance with 49 C.F.R. §213.233; instead, BNSF again refers to Blackwell's testimony about putative additional inspection reports he was shown at deposition. BNSF Brief at 10.[11] Blackwell could not determine from those documents, which he had seen only the day before, whether BNSF conducted weekly inspections in compliance with §213.233. JA82 (30:23 – 33:22). This shows only that BNSF did not satisfy its burden of proof on its affirmative defense. Moreover, BNSF did not even refer to this portion of Blackwell's transcript in support of its motion for summary judgment or its motion to bar Blackwell's testimony. See JA27–41, JA111–121. Thus, even this inadequate testimony was not before the district court.

BNSF cannot legitimately argue that it complied with all of the FRSA regulations or, even if it did, that its track provided Cowden a reasonably safe

---

[10] Cowden and BNSF contend that different parts of §213.63 apply to this track. That is a dispute to be resolved at the district court level, which was not done here because BNSF never raised this issue in the district court. While BNSF repeatedly refers to "dip", that word does not appear in any FRSA regulation.

[11] BNSF also contends Cowden waived this argument because he did not assert it in the district court. BNSF does not indicate how Cowden could have waived an argument he did not know he had to make until after the district court had entered summary judgment *sua sponte* on an affirmative defense BNSF never pleaded and never asserted in its motion for summary judgment. BNSF cites no case that holds Cowden to such an impossible standard. BNSF's waiver argument regarding 45 U.S.C. §55, BNSF Brief at 27, lacks merit for the same reason. Moreover, *Lewy v. Southern Pacific Transportation Co.*, 799 F.2d 1281 (9th Cir. 1986), does not limit the statute to contractual releases. *Lewy* holds only that §55 does not provide a cause of action for wrongful termination. 799 F.2d at 1292–94.

25

workplace, as required by FELA common law principles. E.g., *Burlington N. R.R. Co. v. Farmers Union Oil Co. of Rolla*, 207 F.3d 526, 532 (8th Cir. 2000). Cowden's locomotive dropped and threw him into the air with such force that he suffered permanent and disabling back and neck injuries, bulging disks, and nerve root compression that required disk replacement and fusion surgery and terminated his railroad career. Cowden Brief at 6. That plainly is not a reasonably safe workplace. The track plainly was defective; indeed, BNSF extensively repaired this area of track to prevent the repeated erosion of track conditions caused by persistently muddy conditions and BNSF's repeated failure to replace defective ties and ballast. Cowden Brief at 6–8, 13, 21–22.

The defective condition of the track is not really in dispute; BNSF can only contend (as it contended in the district court), that it could not have foreseen the track would become defective. Whether that defective condition was foreseeable, given the six defects and the persistent muddy conditions in the year preceding Cowden's injury, was a question for the jury to decide. Cowden Brief at 19–20. Since a reasonable jury could decide that defective condition was foreseeable, the trial court erred in granting BNSF summary judgment.

26

**III.** **The district court improperly barred Blackwell from providing opinions regarding BNSF's negligence and repair of the track.**

BNSF appears to concede that Blackwell can testify regarding his expertise and the facts he observed to show BNSF's track was defective and did not comply with regulatory requirements for a class 3 track. BNSF argues only that the district court properly barred Blackwell from providing the jury his opinion that BNSF should have been subjected to more stringent "speed limits" than provided by the regulations. BNSF Brief at 54–57.[12] As indicated above, the FRSA regulations do not impose "speed limits" and Cowden does not dispute the FRA's decision as to the proper speed limit for class 3 compliant tracks. Instead, Cowden contends that BNSF failed to prove this track was class 3 compliant and that, regardless of the regulations (which do not preclude Cowden's action), given the repeated incidents of track defects and persistently muddy conditions, and BNSF's failure to make significant repairs to the track to render them safe until after Cowden's injury, BNSF provided an unreasonably unsafe workplace. Blackwell's opinions in this respect are admissible and the district court erred in barring them based upon erroneous legal conclusions about the preclusive effect of the FRSA regulations

_____

[12] Cowden agrees that Blackwell cannot testify that BNSF violated a particular regulation or other law, as that is an ultimate question of law for the trial court to decide and instruct the jury. E.g., *S. Pine Helicopters, Inc. v. Phoenix Aviation Managers, Inc.*, 320 F.3d 838, 841 (8th Cir. 2003). However, Cowden disputes the district court's finding that Blackwell's opinion consists *only* of ultimate legal conclusions. Cowden Brief at 12–14, 57–58. BNSF's contention that Cowden has not appealed this aspect of the court's decision is erroneous.

27

and erroneous interpretations of the regulations.

Cowden did not waive his arguments as to the admissibility of the extensive repairs BNSF made to the track after Cowden's injury. Cf. BNSF Brief at 57–58. The admissibility of BNSF's track repairs was squarely at issue below and Cowden's "shift in approach" on appeal is not a waiver. *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 890–91 (8th Cir. 2009)(quoting *Universal Title Ins. Co. v. United States*, 942 F.2d 1311, 1314 (8th Cir. 1991)). Moreover, the Court has "discretion to consider an issue for the first time on appeal where the proper resolution is beyond any doubt or when the argument involves a purely legal issue in which no additional evidence or argument would affect the outcome of the case." *Id.* (quotation and editing marks omitted)(quoting *Universal Title*). The admissibility of the repairs is beyond doubt and is a purely legal issue. BNSF's extensive repair of the area shows it knew the persistent muddy conditions were causing repeated track defects that needed to be addressed more extensively than with intermittent piecemeal repairs. The Court therefore can consider Cowden's arguments and should rule that evidence of BNSF's repairs is admissible.

Moreover, by conceding the feasibility exception to Rule 407, BNSF admits it could have remedied the persistently muddy, wet, and defective conditions of its track to prevent the track defect that led to Cowden's injury, had it chosen to do so before Cowden's injury. Thus, regardless of whether Blackwell can testify as to the

28

exact repairs BNSF made to correct the track's defective condition, it is

indisputable that had BNSF chosen to act before rather than after Cowden's injury,

it could have prevented the incident that caused Cowden's career-ending injury.

## CONCLUSION

For the reasons asserted in Cowden's briefs, the Court should reverse the

district court's summary judgment and order barring the testimony of Cowden's

expert.


September 22, 2011                     Respectfully submitted,

                                      SCHLICHTER, BOGARD & DENTON LLP

                                      /s/ Michael A. Wolff
                                      Jerome J. Schlichter
                                      Roger C. Denton
                                      Nelson G. Wolff
                                      Michael A. Wolff
                                      100 South Fourth Street, Suite 900
                                      Saint Louis, Missouri 63102
                                      (314) 621-6115

                                      *Attorneys for Plaintiff-Appellant*

29

## CERTIFICATES OF COMPLIANCE

1. This brief complies with the type-volume limitations of Fed.R.App.P. 32(a)(7)(B) because this brief contains 6,987 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed.R.App.P. 32(a)(5), and the type style requirements of Fed.R.App.P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft® Office Word 2007 in Times New Roman 14 point font.

3. This brief has been scanned for viruses and is virus-free.


/s/ Michael A. Wolff
Attorney for Plaintiff-Appellant
Dated: September 22, 2011

Appellate Case: 11-2003    Page: 36    Date Filed: 09/23/2011 Entry ID: 3832223

**CERTIFICATE OF SERVICE**

I certify that on September 22, 2011, I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

/s/ Michael A. Wolff

Appellate Case: 11-2003    Page: 37    Date Filed: 09/23/2011 Entry ID: 3832223